## THE NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1901.)

### No. 889.

1. ADMIRALTY—REVIEW ON APPEAL—QUESTIONS NOT PRESENTED TO DISTRICT COURT.

A draft of a decree presented to a district court by a respondent in a suit for collision, to be entered under a mandate from the supreme court, and which was properly refused because it permitted respondent to recoup a portion of the cargo damage awarded in favor of interveners in a manner which made such recoupment, in effect, at the expense of other cargo owners, and for that reason did not conform to the mandate, which required a decree against respondent for all cargo damage, cannot be brought into the record on appeal from the decree entered, to be considered by the appellate court as an application for recoupment presented to the district court on its merits, as a matter arising subsequent to the mandate; and, where no question of respondent's right to recoupment in any manner and to any extent was in any other manner presented to the court, there is no basis in the record for an assignment of error because the court failed to provide for any recoupment.

2. COLLISION—SUIT FOR DAMAGES—RIGHT OF RECOUPMENT.

Where a vessel, libeled for collision by the owners of the other vessel on their own behalf and as bailees in behalf of some of their cargo owners, took no steps to bring in libelant's vessel under admiralty rule 59, or to raise the question of her liability by any pleading, and consequently her liability to her cargo owners under the terms of her bills of lading was not adjudicated, upon a finding that both vessels were in fault the respondent is not entitled to recoup a moiety of the cargo damage against the vessel damage adjudged in favor of libelants; and, for still stronger reasons, there can be no such recoupment, on account of cargo damage recovered by intervening libelants, against that recoverable by libelants on behalf of other cargo owners, the effect of which would be to leave such cargo owners unpaid, since, under the pleadings, they cannot be given a decree therefor against libelants or their vessel.

3. INTEREST—JUDGMENTS AND DECREES—STATUTORY PROVISIONS.

Without the aid of a statute, or an order or rule of court, interest is not a legal incident of either judgments or decrees, and general provisions of a statute, fixing the legal rate of interest, do not apply to judgments or decrees without special provision therefor.

4. STATUTES—CONSTRUCTION—TITLE OF ACT.

While the title of an act should not be altogether ignored, and may be considered to determine the meaning of a very doubtful statute, it cannot

be used to extend the provisions of an act so as to include within its scope that which without such aid would plainly not be included.

5. SAME—REPEAL BY IMPLICATION.

Rev. St. Mich. 1838, c. 6, § 8, as amended in 1855, and carried forward into Comp. Laws Mich. 1897, § 4865, fixing the rate of interest on judgments and decrees at 7 per cent., was not repealed by implication by Act 1891 (Sess. Laws Mich. 1891, p. 197), entitled "An act to regulate the interest of money on account, interest on money judgments, verdicts," etc., which by its terms merely reduces the rate of interest on money generally, and makes no reference to judgments or decrees, and which repeals only "acts or parts of acts contravening the provisions of this act," since the provisions of such act are not contravened by section 8 of the act of 1838, which relates only and specifically to interest on judgments and decrees.[1]

Appeal from the District Court of the United States for the Eastern District of Michigan.

In October, 1891, a collision occurred in the Detroit river between the steamers Conemaugh and New York, which resulted in the sinking of the Conemaugh, the total loss of her cargo, and in a slight loss to the New York. The Erie & Western Transportation Company, as owner of the Conemaugh and as bailee of her cargo, filed a libel in the district court against the propeller New York to recover the damages sustained by the Conemaugh and for the damages to her cargo. The Union Steamboat Company, as claimant and owner of the New York, gave a stipulation for the release of the vessel, and filed an answer denying all liability for the collision, and alleging that the steamer Conemaugh was solely at fault. Subsequently, by leave of the court, the Union Steamboat Company filed its cross libel against the propeller Conemaugh, to recover the sum of $3,000 alleged to be the damages sustained by the New York in the said collision with the Conemaugh. This cross libel prayed process, but none issued, and no answer was ever filed thereto. Upon the reference to a commissioner to ascertain damages, it was, among other things, stipulated "that, in case the matter shall become material, either in this court or in the court of appeals, the loss suffered by the propeller New York in and by said collision was the sum of $3,391.19," as of November 1, 1891. After the litigation had been started and at different dates various underwriters upon the Conemaugh's cargo intervened, and filed separate intervening petitions against the Union Steamboat Company as owners of the New York, seeking to recover insurance paid by them on said cargo. The remainder of the cargo owners and underwriters continued to be represented by the Erie & Western Transportation Company as trustee or bailee of the cargo claimants. Upon a final hearing, the district court held the New York solely at fault, and condemned her to pay all the loss sustained by the Conemaugh and all the damage to her cargo. Upon appeal to this court that decree was reversed, the Conemaugh being held solely at fault, and a decree was directed against the owners of the Conemaugh for the stipulated loss sustained by the New York in said collision. 54 U. S. App. 248, 27 C. C. A. 154, 82 Fed. 819, and 56 U. S. App. 146, 30 C. C. A. 628, 86 Fed. 814. The case was then taken to the supreme court upon certiorari, where the decree of this court was reversed; that court holding that both vessels were at fault, and that the loss to the vessels should be divided, but that the cargo owners or underwriters were entitled to recover their entire loss against the owners of the New York, notwithstanding the Conemaugh might be also liable for the collision. The case was remanded for a decree in pursuance of the opinion of that court. The case is reported under the style of The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126. The district court accordingly rendered a decree requiring the owners of the New York to pay all the damages sustained by the intervening cargo underwriters, aggregating $19,841.56, and that they should pay to the owners of the Conemaugh, as trustee for the owners of the cargo and their underwriters "other than the interveners," the further sum of $19,627.67; these two sums being the full loss sustained by the

---

[1] Repeal of statutes by implication, see note to First Nat. Bank of Butte v. Weidenbeck, 38 C. C. A. 136.

Conemaugh's cargo. The court also directed that the owners of the New York should pay to the owners of the Conemaugh the further sum of $13.-083.33, "being one-half of the damage of the said Conemaugh, less one-half the damage suffered by the New York in said collision." The Union Steamboat Company have assigned as error: (1) That the court erred in not permitting the Union Steamboat Company to offset or recoup any part of the damages paid on account of loss or damage to the cargo of the steamer Conemaugh against the claim for damages sustained by the libelant as owner of the steamer Conemaugh; (2) that the court erred in allowing interest on the various sums decreed to be due the libelant and interveners at the rate of 7 per cent.; (3) that the court erred in decreeing that the appellants should pay one-half of the cost of the cause in the circuit court of appeals.

C. E. Kremer, for appellant.

H. D. Goulder, for Transportation Co.

F. H. Canfield, for the owners of cargo.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

1. That the decree appealed from conformed in every particular to the mandate of the supreme court has been expressly adjudicated under a petition filed in that court prior to this appeal, praying that court, by writ of mandamus, to compel the district court to set aside the decree here complained of, and "to enter one dividing the damages equally, so that petitioner would not be decreed to pay more than one-half the total damages arising out of the collision between the New York and Conemaugh, with interest not exceeding five per cent. per annum." This was denied, the court saying:

"The only questions decided were as to the respective faults of the two vessels, and the claim of the underwriters upon the Conemaugh's cargo, that they were entitled to a recovery to the full amount of their damages against the New York, notwithstanding the Conemaugh was also in fault for the collision. This claim was sustained, and directions given to enter a decree in conformity to the opinion of this court. Such decree was entered, dividing the damages between the two vessels, and awarding to the underwriters of the cargo a full recovery against the New York. It may be true that the decree holds the New York liable for seventy-six per cent. of the entire damages, and not fifty per cent., but this results from the fact that she was primarily held for the entire value of the cargo. The equal division applied only to the vessels, and, upon the other hand, if petitioner be entitled to the recoupment claimed, it would apparently result in an affirmative decree in its favor. But no question of recouping one-half of such damages to the cargo from the moiety of damages awarded the Conemaugh was made by counsel or passed upon by this court. It is now insisted that, under the cases of The Chattahoochee, 173 U. S. 540, 19 Sup. Ct. 491, 43 L. Ed. 801, and The Albert Dumois, 177 U. S. 240, 20 Sup. Ct. 595, 44 L. Ed. 751, this should have been done. This may be so; but it is an entirely new question, quite unaffected by the case of the New York, and, if the court erred in refusing to allow such recoupment, the remedy is by appeal, and not by mandamus. Perhaps a mandamus might lie to review the allowance of interest, but that may also be considered on appeal. No disobedience of the mandate having been shown, the petition must be denied." Ex parte Union Steamboat Co., 178 U. S. 317, 320, 20 Sup. Ct. 904, 905, 44 L. Ed. 1084, 1085.

Referring to the general rule, and not particularly to the case in hand, the supreme court, in the same opinion, said: "The inferior court is justified in considering and deciding any question left open

by the mandate and opinion of this court, and its decision upon such matter can only be reviewed upon a new appeal to the proper court." 178 U. S. 319, 20 Sup. Ct. 905, 44 L. Ed. 1085. That this is the proper court to review the action of the district court in respect to matters open to it to consider and decide, as matter subsequent to, and not concluded by, the mandate of the supreme court, we had occasion to decide at a former day of this session in an opinion reported in 104 Fed. 561, under the style of The New York. See, also, Mason v. Mining Co., 153 U. S. 361, 14 Sup. Ct. 847, 38 L. Ed. 745.

For appellants it is contended that the question of recoupment could not come on for decision until it was determined that both vessels were at fault, and until the cargo owners and underwriters had recovered their full damages from appellant, and that the district court had, therefore, when entering a decree under the mandate, the right to consider and decide whether or not appellant had then the right to recoup one-half of the cargo damages it was thereby condemned to pay from the moiety of damages awarded the Conemaugh, and that any error committed by the district court in denying or granting such recoupment may be reviewed here. To this view of the abstract question we are disposed to assent. But when and how was this matter of recoupment presented to the district court? The decree which the court did enter was in precise conformity to the mandate of the supreme court. The cargo underwriters, having proceeded only against the New York, were entitled to recover their full damages against it as the only vessel impleaded.

If the New York had availed itself of admiralty rule 59, as was done in the case of The Beaconsfield, 158 U. S. 303, 307, 15 Sup. Ct. 860, 39 L. Ed. 993, and brought in the Conemaugh as a vessel in fault, which also ought to be proceeded against for cargo losses, the question of the liability of that vessel to cargo underwriters would have been presented, and the cargo damages would have been divided, if it had been found that that vessel was also in fault for the collision, and had no valid special stipulations in her bills of lading relieving her from liability to cargo underwriters. But this course was not taken. By neither cross bill, petition, nor answer was this question of the Conemaugh's liability to cargo underwriters presented. Nor does it appear that the question of recoupment, now raised by an assignment of errors upon the decree of the district court, was ever presented to that court by any form of pleading. Since this case was heard, the appellant has applied for leave to supplement the record by adding to it a decree which they prepared and submitted to the district court as a decree in compliance with the mandate of the supreme court, whereby the entire losses were equally divided between the vessels. That proposed decree is the decree which the supreme court refused to compel the district court to enter when appellant applied to it for a writ of mandamus. In substance, the insistence of the Union Steamboat Company was that a decree should go against it for $19,841.56 in favor of cargo underwriters, who had intervened for themselves, and a decree in favor of the Erie & Western Transportation Company, as trustee

for cargo underwriters represented by it, for $12,976.38. That result was reached in this way:

| | | |
|---|---|---|
| Libelant recovers of the New York one-half of the damages sustained by the Conemaugh | $15,254 23 | |
| Recovers one-half of the amount sustained by it as bailee of the cargo | 8,813 83 | |
| | | $24,068 06 |
| Less one-half of amount of intervener's damages paid to cargo interveners by New York | $ 8,920 78 | |
| Less one-half of amount of damages sustained by New York | 2,170 90 | |
| | | $11,091 68 |
| | | $12,976 38 |

While this plan avoided the necessity for an affirmative decree in favor of the appellant without any pleading asking such relief, it did so at the expense of the underwriters represented by the appellee, whose claims aggregated $19,627.67,—an amount exceeding the proposed decree in their favor by $6,651.29. This was clearly and distinctly inadmissible, as not conforming to the mandate of the supreme court, which directed that a decree should go against the New York for the whole of the cargo damages, as the only vessel impleaded by cargo owners or underwriters. Such a decree was not in accordance with the mandate, as the supreme court expressly decided. 178 U. S. 317, 20 Sup. Ct. 904, 44 L. Ed. 1084. The equal division directed by that court applied only to the vessels. No question of recoupment having been presented or decided by the supreme court, it was not competent for that court to compel the district court to enter a decree which was not required by its original decision. It is now sought to inject that proposed decree into this record as a basis for assigning as error the failure by the district court to allow recoupment in some form. The decree never was a part of the record in the court below, and the fact that it was ever proposed as a decree in compliance with the mandate of the supreme court can only be shown by evidence de hors the record. No pleading or oral application for recoupment, other than may be inferred from it, was ever made to the court below. It was submitted, not by way of an application to the power of that court over a matter subsequent to the mandate and not concluded, but as a decree required by the mandate. If it were here we could not regard it as an application for recoupment to be granted or refused on its merits as a matter subsequent to the mandate, but as an application based upon a misconception of the mandate. The application for a writ of certiorari is refused.

The right of set-off or counterclaim or recoupment, being in no way presented by any pleading in the case, was not so involved in the nature of the decree rendered as to make it error if the matter was passed sub silentio. It was not a defense which the appellant was obliged to then present. The mere fact that there are cross demands will not operate as an estoppel, if in fact the cross demand was not presented and adjudicated. A set-off or counterclaim is generally admissible in equity only when the circumstances are such

as to justify the interference of equity to prevent injustice or avoid circuity of action. Clearly, it was not admissible to set off the decree in favor of the appellee as trustee for underwriters or cargo owners who had not intervened by a claim against the appellee in a wholly different right. Insurance Co. v. McKown, 33 C. C. A. 212, 90 Fed. 646. Neither are we aware of any authority which would justify an affirmative decree upon a set-off in the absence of some pleading seeking such affirmative relief. The Dove, 91 U. S. 381, 384, 23 L. Ed. 354; Railroad Co. v. Bradleys, 10 Wall. 299, 19 L. Ed. 894; The Ethel, 13 C. C. A. 504, 66 Fed. 340.

No issue having ever been made as to the liability of the Conemaugh to her cargo underwriters, it would seem altogether possible that an injustice might be done if it should be summarily assumed that because she was found in fault, and liable to the New York for one-half of her damages, she is also liable to the underwriters upon her own cargo. Counsel for the Conemaugh say that there are special stipulations in her bills of lading which they write to set up against the claims of underwriters. Manifestly this court should not foreclose this defense upon a record which fails to show that any such right of set-off or recoupment was ever claimed or asserted in the court below, or that the Conemaugh has ever been called upon to respond to the claims of her cargo underwriters. Not having been passed upon in the court of original jurisdiction, this court is not disposed to hold that the lower court erred in passing the matter over. Harding v. Giddings, 19 C. C. A. 508, 73 Fed. 335; Lloyd v. Preston, 146 U. S. 630, 13 Sup. Ct. 131, 36 L. Ed. 1111. Neither do we think that innocent third parties should be longer delayed in the collection of cargo damages by the delay incident to sending this case back for the purpose of allowing such pleadings as would properly present the question. The appellants, not being obliged to assert their cross demand or claim for contribution by way of recoupment in this cause, did not do so. This leaves them free to assert their claim for contribution in an independent proceeding against the Conemaugh. No special equity appearing, this will be no injustice. The motion to remand, with leave to amend the pleadings, is therefore denied.

2. We come, now, to the question of the rate of interest upon the decree allowed. The supreme court directed that the district court should enter a decree in conformity with the opinion, "with interest from July 3, 1896, until paid, at the same rate per annum that decrees bear in the courts of the state of Michigan." In fixing 7 per cent. as the rate which decrees bear in the courts of Michigan, the learned district judge held that the eighth section of chapter 6, Rev. St. Mich. 1838, as amended in 1855, was still in force. That section, as thus amended, has been carried forward into the various compilations of the Michigan Statutes, and appears now among the laws in force as 4865, Comp. Laws Mich. 1897. This section reads as follows:

"Interest may be allowed and received upon all judgments at law, for the recovery of any sums of money, and upon all decrees in chancery for the payment of any sums of money, whatever may be the cause or form of action or suit in which such judgment or decree shall be rendered or made; and such

interest may be collected on execution, at the rate of seven per centum per annum: provided, that on a judgment rendered or any written instrument, having a different rate, the interest shall be computed at the rate specified in such instrument not exceeding ten per centum."

The same section is also found in the Compiled Laws of 1857 as section 1317, and in the Compiled Laws of 1871 as section 1635, and in Howell's Annotated Statutes as section 1597. The contention is that this section of the old act of 1838 has been repealed, altered, or amended so that the rate of interest on decrees is now five per cent.

The amounts involved being large, and interest having started in July, 1896, the question is one of much importance to the parties. That the legal rate of interest, in the absence of contract, on money and all forms of contract, is now 5 per cent., is conceded. That judgments and decrees should continue to bear 7 per cent. in Michigan, if true, is a curious anomaly. Odd as it may appear, and harsh as may be the result, it is, nevertheless, a question depending upon the ordinary rule touching the repeal or amendment of laws by implication; for it is not pretended that there has been any express repeal or amendment of the statute we have set out. Without the aid of a statute or the order or rule of the court, interest is not a legal incident of either judgments or decrees. Creuze v. Hunter, 2 Ves. 157; Perkins v. Fourniquet, 14 How. 328, 14 L. Ed. 441; Railroad Co. v. Harmon's Adm'r, 147 U. S. 571, 585, 13 Sup. Ct. 557, 37 L. Ed. 284. Without the special provision made by the eighth section of the Michigan act of 1838, the general provision fixing the legal rate of interest, found in the third section of the same act, would not have applied to judgments and decrees. The third section of the act referred to was in these words:

"The interest of money shall continue to be at the rate of seven dollars and no more, upon one hundred dollars for a year, and at the same rate for a greater or less sum, and for a longer or shorter time: provided, that in cases of money loaned it shall be lawful for the parties to stipulate in writing for the payment of any interest not exceeding ten per cent. per annum."

This section was even carried forward as a distinct section in subsequent compilations of the laws, and constitutes section 1594 of Howell's Annotated Statutes. The act which it is supposed has amended or repealed the eighth section of the act of 1838 is an act passed in 1891, and found in Sess. Laws Mich. 1891, p. 197. That act and its caption is as follows:

"Section 1. An act to regulate the interest of money on account, interest on money judgments, verdicts, etc.

"The people of the state of Michigan enact: That the interest of money shall be at the rate of six dollars upon one hundred dollars for a year and at the same rate for a greater or less sum and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest not exceeding eight per cent. per annum: provided, that this act shall not apply to existing contracts, whether the same be either due, not due, or part due."

"Sec. 4. All acts or parts of acts contravening the provisions of this act are hereby repealed."

This act was itself amended in 1899 so as to reduce the rate to 5 per cent. Act No. 207, Pub. Acts 1899. The repealing clause of the

act of 1891 is limited to "all acts or parts of acts contravening the provisions of this act." Confessedly, no act or part of an act is thereby repealed, unless it contravenes the provisions of the act of 1891. Though there are other acts which relate to the subject of interest, yet those acts must stand, unless their provisions are repugnant to the later law.

Counsel for the appellees have called to our attention a number of special provisions of the law of Michigan relating to interest which were in force when the act of 1891 was passed. Thus, section 1195, Comp. Laws Mich. 1897, provides for interest on certain educational funds of the state, and section 1196 provides for interest on the University fund. This last section the supreme court of Michigan, in University Regents v. Auditor General, 109 Mich. 134, 66 N. W. 956, held, had not been affected by the act of 1891.

Besides these, there are sections 3912, 10470, Comp. Laws Mich. 1897, one fixing a special rate for money due for delinquent taxes, while the other provides for a special rate in judgments against incorporated banks. To construe the act of 1891 as operating to fix the rate of interest at 5 per cent. upon all obligations requiring the payment of money would alter, repeal, or amend every one of the special acts above referred to, though it is plain that there is no necessary repugnance between those acts and the act of 1891.

Aside from the caption of this act of 1891, it could not be well supposed that the legislature intended to deal with interest upon judgments and decrees. That subject had always been regulated by special legislation, without which neither judgments nor decrees would necessarily bear interest. The caption does refer to interest upon "judgments, verdicts, etc.," but the body of the act makes no more reference to such obligations than did the third section of the act of 1838, which was in substantially the same words. If the whole subject of interest on judgments and decrees was dependent upon this act of 1891, it is quite plain that neither would bear interest by virtue of its terms.

Neither does the caption refer to the subject of interest upon decrees as distinguished from judgments. The act of 1842 (section 966, Rev. St. U. S.) regulates the subject of interest upon judgments. This has been held not to apply to decrees. Perkins v. Fourniquet, 14 How. 328, 331, 14 L. Ed. 441; Hagerman v. Moran, 21 C. C. A. 242, 75 Fed. 99.

Much stress has, however, been laid upon the title of this act as indicating a purpose to include the subject of interest upon "judgments, verdicts, etc.," meaning thereby "decrees" as of like character with judgments. While the title of an act should not be altogether ignored, and may afford a key to unlock the meaning of a very doubtful statute, yet the title of an act cannot be used to extend the provisions of an act so as to include within its scope that which without such aid would plainly not be included. Hayden v. Barney, 5 Wall. 107, 18 L. Ed. 518; Goodlett v. Railroad Co., 122 U. S. 391, 408, 7 Sup. Ct. 1254, 30 L. Ed. 1230; U. S. v. Palmer, 3 Wheat. 610, 4 L. Ed. 471. That the special provisions of the Michigan Statutes in respect to interest upon judgments and decrees are not neces-

sarily inconsistent with the provision for the reduction of the general rate of interest upon contracts, implied or express, and not reduced to judgments or decrees, is, to our minds, very plain. The two subjects had always theretofore been regulated by distinct provisions of law. The act of 1891 was plainly intended to displace the existing general law as embodied in the third section of the act of 1838, but we find no such repugnancy to the eighth section of the same statute as to justify us in holding that it has been repealed or amended by the later act. South Carolina v. Stoll, 17 Wall. 431, 21 L. Ed. 650; In re Henderson's Tobacco, 11 Wall. 652, 20 L. Ed. 235. Section 8 of the act of 1838 was a special act dealing only with the subject of interest upon judgments and decrees, which, without such legislation, would not, as a legal incident, bear interest. The act of 1891 may well be regarded as dealing only with the subject of interest, as regulated by the third section of the same act of 1838. Though both section 8 of the act of 1838 and the act of 1891 deal with the subject of interest, yet they can both stand together without inconsistency. In such circumstances, neither a repeal nor amendment of the older act will occur by implication alone. The purpose of the more general of the two acts relative to the same general subject is not necessarily repugnant to a different intent in regard to interest upon a particular class or kind of obligations. The purposes of the general rule in respect to legal interest in cases not particularly provided for may be effectuated without implying a change of intention in respect of particular matters specifically dealt with in prior legislation. Where two distinct acts relate to the same general subject, one will not repeal the other by implication, unless the later act is plainly intended to cover the whole field, or is manifestly repugnant to the older law. Rogers v. Railroad Co., 33 C. C. A. 517, 91 Fed. 299.

3. It is assigned as error that the district court decreed that the appellants should pay one-half of all the costs of this cause "in the circuit court of appeals." This was error, as those costs were included in the costs taxed in the supreme court, and provided for by another part of the decree below. The decree will in this respect be modified, and in all other respects affirmed.