## HOBGOOD v. EHLEN.

(Filed May 16, 1906).

*Corporations—Stockholders—Unpaid Subscriptions—Law of Domicile—Property for Stock—Fraud.*

1. In an action by a trustee in bankruptcy of a corporation to recover from the stockholders the unpaid stock subscriptions on the ground that they had attempted to pay for the stock in property of no real value, in order to show the motives and purposes which prompted the parties in forming the corporation and the fraudulent character of the transaction, it was material to show the antecedent steps and how the defendants came into the enterprise.

2. Where a corporation was organized under the laws of another State, the liability of the organizers and stockholders for the debts of the corporation when in bankruptcy, is to be determined by the law of the State of its domicile.

3. In the absence of charter restrictions, a corporation may take property, which is reasonably necessary for its legitimate business, in payment of its stock, but when so received the property must be taken at its reasonable monetary value. Although a margin may be allowed for an honest difference of opinion as to value, a valuation grossly excessive, knowingly made, while its acceptance may bind the corporation, is a fraud on creditors and they may proceed against the stockholder individually, who sells the property, as for an unpaid subscription.

ACTION by F. P. Hobgood, Trustee in Bankruptcy of the Ronda Lumber and Manufacturing Corporation, against W. B. Ehlen and others, heard by *Judge E. B. Jones* and a jury, at the December Term, 1905, of the Superior Court of FORSYTH.

This was an action brought by the plaintiff, trustee in bankruptcy of the Ronda Lumber & Manufacturing Corporation, against the defendants, who were the subscribers to and holders of the stock of said corporation, to recover from them the amount of their unpaid stock subscriptions, the plaintiff alleging that the defendants had attempted to pay for the stock in property which had no real value. The plaintiff had a judgment below, and the defendant, W. B. Ehlen, alone appealed.

These are the issues submitted:

1. What amount of stock was issued to W. B. Ehlen in the Ronda Lumber & Manufacturing Corporation? Answer: $50,300, par value.

2. What amount of stock was issued to W. H. McElwee in the Ronda Lumber & Manufacturing Corporation? Answer: $19,500, par value.

3. What amount of stock was issued to Robert Hickerson in the Ronda Lumber & Manufacturing Corporation? Answer: $19,500, par value.

4. Was the Ronda Lumber & Manufacturing Corporation organized and its stock issued in conformity with the laws of Delaware? Answer: Yes.

5. Was there an intent to defraud and cheat on the part of the defendants, or either of them, in the organization and issuing of the stock in the Ronda Lumber & Manufacturing Corporation to the defendants or others? Answer: Yes, all.

6. What was the value of the property of the Ronda Pin & Bracket Company at the time of the organization of the Ronda Lumber and Manufacturing Corporation? Answer: $896.63.

7. What is the amount of the indebtedness of the Ronda Lumber & Manufacturing Corporation? Answer: $38,983.92.

8. In what amount is the Ronda Lumber & Manufacturing Corporation indebted to W. B. Ehlen? Answer: $20,637.80.

9. What is the amount of assets in the hands of Hobgood, trustee? Answer: $5,769.36.

*L. M. Swink, Lindsay Patterson* and *Manly & Hendren* for the plaintiff.

*Busbee & Busbee, E. J. Justice* and *Stedman & Cooke* for the defendant.

BROWN, J. The first ten exceptions appearing in the record relate to matters connected with the relations existing between Ehlen and his co-defendants prior to the organization of the Ronda Lumber & Manufacturing Corporation. It is insisted that such matters are not material to the issues and that the evidence was irrelevant and calculated to prejudice the jury against Ehlen. We think the evidence was material and the exceptions are without merit. In order to show the motives and purposes which prompted the parties in forming the corporation and the fraudulent character of the transaction, it was material to show the antecedent steps and how the defendant Ehlen came into the enterprise.

The remaining exceptions raise the question of the sufficiency of the evidence. The defendant insists that the court should have instructed the jury that there was no evidence as to him to warrant an affirmative answer to the fifth issue, which involved the question of fraud. We think the whole controversy hinges on the correctness of that ruling. The corporation known as the Ronda Lumber & Manufacturing Corporation was organized by the defendants under the laws of the State of Delaware, which contains the following provision: "Section 14. Any corporation existing under any law in this State may issue stock for labor done or personal

property or real estate or leases thereof; in the absence of fraud in the transaction, the judgment of the directors as to the value of such labor, property, real estate or leases shall be conclusive." Public Laws of Del., vol. 2, part 1, 1901, p. 292. The liability of the defendant, as an organizer and stockholder, for the debts of the bankrupt corporation is, therefore, to be determined by the law of Delaware, the domicile of the corporation. Thompson on Liability of Stockholders, section 89. In consequence of the ruling of the judge below, it is unnecessary that we should determine that constructive fraud is sufficient to support the finding of the jury. Upon this issue the court charged as follows: "The law under which this case is to be tried is the law of Delaware, and I charge you that where fraud is referred to in that statute 'actual' and not 'constructive' fraud is meant. Constructive fraud, as distinguished from actual fraud, is inferred from illegal or improper acts that result in loss or injury to others. Actual fraud is established by competent proof of corrupt purposes, wicked or unlawful intent to cheat another or others. Applying it to this case constructive fraud would be that kind of fraud that might be inferred from an over-valuation of property conveyed to the corporation, in the absence of proof of actual intent to defraud. The directors of the Ronda Lumber & Manufacturing Corporation, having placed a valuation on the property conveyed and set over to said corporation and issued stock therefor, if you believe the evidence, their action in that matter is conclusive as to the value of said property, unless you find that this was done in actual fraud. It is not enough for the jury to find that the property was valued at too much by the directors of the Ronda Lumber & Manufacturing Corporation, but in order to answer the fifth issue 'yes' you would have to go further and find fraudulent over-valuation." We think the facts and circumstances in evidence amply sufficient to be submitted to the jury upon the issue of actual fraud, and warranted their finding. It is very

difficult to prove actual fraud in many cases. It is frequently necessary to seek out the ear marks or badges of fraud and present them to the jury as evidence from which they may infer it. A bare recital of the facts which the evidence tends most strongly to prove will suggest to the impartial mind, it seems to us, that the animating purpose in forming the corporation was to float a lot of worthless stock with the design to cheat and defraud an unsuspecting public, as well as to give a fictitious credit to a worthless concern. Not only was Ehlen's stock issued to him in direct violation of the statute for so-called services to be performed, but the entire capital stock issued was "water," pure and simple. In or about April, 1902, the defendants, Hickerson and McElwee, as co-partners, began a small lumber business in the town of Ronda, N. C., under the firm name of "Ronda Pin & Bracket Company," and this business was continued by McElwee and Hickerson until it was absorbed by the Ronda Lumber & Manufacturing Corporation. The tangible assets of this partnership were valued by the jury at $896.63. In September, 1902, the defendant Ehlen proposed to the defendants McElwee and Hickerson to form a corporation under the laws of the State of Delaware, with a capital stock of $50,000, and that the corporation should take over the assets and good will of the partnership and pay therefor its total authorized capital stock, to-wit, $50,000. The defendant Ehlen was to finance the corporation, and by the word "finance" it was meant that he was to loan to the corporation the money on which it was to do business and to take therefor the note of the corporation. This was agreed to by all the defendants, but in a few days this agreement was modified by increasing the capital stock of the corporation to $100,000 and agreeing that the defendants should receive that amount in payment for the assets of the partnership instead of $50,000. The only consideration for this increase in value was the agreement of Ehlen to finance the company to a larger extent, that

is, he was to loan it more money on which to do business. It was further agreed that Ehlen was to have 54 per cent of the stock, and the remainder to be equally divided between Hickerson and McElwee. In accordance with these contracts, the defendant Ehlen employed Messrs. Bayard & Coe, of Baltimore, to organize the corporation, and these gentlemen obtained the services of the Delaware Charter & Guarantee Company to secure a charter under the laws of the State of Delaware, and the company did, on the 29th day of September, 1902, obtain a charter for the bankrupt corporation with authorized capital stock of $100,000, divided into 2,000 shares of the par value of $50 each, and by the terms of the charter the amount of capital stock with which the corporation would commence business was fixed at $1,000, this being 20 shares. This stock was subscribed for as follows: Six shares by Richard H. Bayard, one of the attorneys employed by the defendant Ehlen; 6 shares by Josiah Marvel, an official or employee of the Guarantee & Trust Company, of Wilmington, Delaware, and 8 shares by Andrew Marvel, also an official of the Guarantee & Trust Company. At the first meeting of the stockholders, held at Wilmington, Del., on October 1, 1902, the stock subscribed for in the name of Andrew Marvel was assigned to W. E. Ferguson, private secretary of the defendant Ehlen. The organization was effected by the election of the following persons as directors: Richard H. Bayard, Josiah Marvel and W. E. Ferguson; and at the directors' meeting, held on the 13th day of October, the following persons were elected officers: Josiah Marvel, president; Richard H. Bayard, vice-president; W. E. Ferguson, secretary and treasurer. The defendants thereupon presented to the stockholders and directors of this corporation the proposal hereinbefore mentioned; the directors accepted the proposition, valued the property of the Ronda Pin & Bracket Company at $100,000, and authorized the corporation to issue to the defendants its entire capital stock, to-wit, $100,000, and in accordance therewith, on

the 14th of October, a certificate was issued to the defendants
for 2,000 shares of the capital stock, and thereupon the cor-
poration took over the business of the Ronda Pin & Bracket
Company.   On the 29th of October, 1902, the certificate
issued to the defendants was surrendered to the corporation
and cancelled, and in lieu thereof, and in accordance with
the agreement between the defendants, certificates were
issued in the amounts and to the following named persons:
W. B. Ehlen, 1,006 shares; W. H. McElwee, 390 shares;
Robert L. Hickerson, 390 shares; William E. Ferguson, 8
shares; Richard H. Bayard, 6 shares; Bayard & Coe, 194
shares; Josiah Marvel, 6 shares.   Prior to the formation of
the corporation and on the 19th of September, 1902, the de-
fendants Hickerson and McElwee took an inventory of the
Ronda Pin & Bracket Company, and ascertained that the
total value of the partnership property was less than $900.
The result of this investigation was communicated to Ehlen.
The directors who said that, in their judgment, this property
was worth $100,000, knew nothing of the property they were
valuing save such information as they gathered from the de-
fendant Ehlen and the defendant McElwee; none of these
directors were ever at Ronda nor did they make any inquiries
other than from Ehlen and McElwee.   The proposition made
by the defendants to the corporation and which was accepted
by the corporation, and upon which the stock was issued, pur-
ported to convey, in consideration of the receipt of the stock,
the property, assets and good will of the Ronda Pin &
Bracket Company, but as a matter of fact the evidence shows
there was an agreement in parol by which the corporation
was to pay the owners of the Ronda Pin & Bracket Company,
to-wit, McElwee & Hickerson, in cash for all its tangible
assets, and, after the organization of the corporation, this was
done; so, as a matter of fact, the only thing obtained by the
corporation for its entire capital stock was the good will of
the Ronda Pin & Bracket Company.   The defendant Ehlen

did not own any of the property of the Ronda Pin & Bracket Company, neither did he pay anything therefor; but he was to pay for his stock in the new corporation by his services in suggesting the scheme and loaning to the corporation the money upon which to do business. On January 10, 1905, this water-logged craft, being no longer able to float, was forced into bankruptcy and plaintiff elected trustee. According to the finding of the jury the concern owes about $19,000 to general creditors, exclusive of $20,000 to Ehlen.

The language of *Mr. Justice Shiras* in *Lloyd v. Preston,* 146 U. S., 630, comes to mind as being especially appropriate in reviewing the evidence in this case: "The bare statement of the facts pertaining to the organization of the company fully justifies the opinion that the entire organization was grossly fraudulent from first to last, without a single honest incident or redeeming feature."

We have not been cited to any decisions from the courts of Delaware defining the word fraud in the statute quoted, but His Honor construed it to mean actual fraud and the defendant cannot complain of that ruling. In New Jersey it is held that "any device by which the stock of a corporation passes to a stockholder as fully paid without payment in full, either in cash or property purchased to the amount of the value of the stock, such as an intentional over-valuation of property on the understanding that a portion of the stock issued shall be returned for distribution among the directors voting for a purchase of the property without payment by them, constitutes actual fraud against the creditors of the corporation." *Eastern Bank v. Brick Co.,* 60 Atlantic Rep., 54. It is also held that an owner of stock in a corporation issued in consideration of a transfer of property, the valuation of which is *wholly* speculative, visionary and imaginary, is liable to creditors. *Trust Co. v. Turner,* 111 Iowa, 664. In *Douglas v. Ireland,* 73 N. Y., 100, it is held that, to charge the stockholder with the debts of the corporation, it must be shown

that the property was not only purchased at an over-valuation, but it must be also shown that the purchase was in bad faith and to evade the statute; and that to show this it is only necessary to prove: First, that the stock issued exceeded in amount the value of the property in exchange for which it was given; and, second, that the directors or trustees deliberately and with knowledge of the real value of the property over-valued it, and paid in stock for it an amount which they knew was in excess of its actual value.

The general rule in all the States is that a subscriber to the stock of a corporation is under a liability to pay therefor, which liability, so far as creditors are concerned, can only be extinguished by actual payment or a valid release. *South Milwaukee Co. v. Murphy,* 112 Wis., 614; 26 Am. & Eng. Enc. (2 Ed.), 912. This is founded upon the theory that the capital stock is the fund or resource with which the corporation is enabled to transact its business and upon the faith of which persons give credit to the corporation. It is a trust fund for the benefit of creditors. The public has a right to assume that the capital stock has been or will be paid for in money or money's worth when necessary to meet corporate liabilities. Has the stock of this corporation ever been paid for in money, or its worth, by anyone? So far as we can see not a single share has been paid for. The organizing directors were the agents and employees of these defendants, employed by them for no other purpose than to issue the stock and take over the insignificant concern known as the Ronda Pin & Bracket Company in payment of the entire $100,000 capital stock. The defendants were to all intent and purpose both buyer and seller. These "men of straw" were' mere automatons that moved when defendants pulled the string. The will of the defendants was their will, and they exercised no independent judgment. There is no evidence that they paid a dime for the few shares of stock assigned to them. These were doubtless given to them in order to qualify them

as directors so they could pass the resolutions prepared in advance for them, and register the will of their employers. One of the most significant indications of fraud is disclosed by the examination of McElwee. Notwithstanding the written agreement of September 13, 1902, provides that the business and assets of the Ronda Pin & Bracket Company are to be turned over in payment of stock in the new corporation, and notwithstanding the directors of the latter so accepted it, there was at the same time a secret agreement betwen Ehlen and his co-defendants that the latter were to be paid in cash $895.65, the total inventoried assets of the Pin & Bracket Company, and given their stock in addition. So it appears that the new corporation got nothing whatever from McElwee and Hickerson in payment for their stock except the so-called *good will* of the Pin & Bracket Company. What was the *good will* of this infant industry of only six months' duration with assets under $900 worth? Plainly, nothing. In the case of *Camden v. Stewart,* 144 U. S., 104, the Supreme Court of the United States places its estimate upon the value of such an asset in the following language: "The experience and good will of the partners, which it was claimed were transferred to the corporation, were of too unsubstantial and shadowy a nature to be capable of pecuniary estimation in this connection."

The record discloses the proposition made by the defendants to their employees, the board of directors of the bankrupt corporation, to pay for the entire capital stock of $100,000 in the following manner:

1. To turn over the entire business and assets of the Ronda Pin & Bracket Company to the corporation.

2. To turn over to the corporation any and all options that defendants McElwee and Hickerson held upon timber land.

3. The defendant McElwee was to give his services for six months from the date of the organization of the corporation in obtaining options on timber rights.

4. The defendant Ehlen was to bear the expenses of the organization of the corporation over and above $250 and was to "finance" it.

The corporation did not get the assets and business of the Ronda Pin & Bracket Company, but only its good will, as we have already shown. The assets were paid for in cash and the good will is worthless. McElwee and Hickerson owned no options at the time. They only had some "in view," and of those only one ever materialized. These "options in view" cannot support the issuance of the stock, for the statute uses the words "real estate or leases thereof." If the options had been "in hand," much less "in view," they would not come within the terms "real estate or leases thereof," for an option is neither. The defendant McElwee agreed to give his services for six months from the date of the organization in obtaining options on timber. This was a plain violation of the statute, which uses the words "labor done." The directors had no power to accept prospective services, which might be worthless to the corporation, in payment for its stock. Ehlen's proposition to finance the corporation means simply to loan it money, and his other proposition to bear the expenses of the organization over and above $250 cost him nothing, as there is no evidence that he was called upon to pay a penny on that account. So it seems to us that the evidence is conclusive that this dummy board of directors at the instance of these defendants issued $100,000, the entire capital stock of the corporation, and received nothing whatever of value in payment for it. The law seems to be well settled, and the consensus of all the authorities is to the effect that, in the absence of charter restrictions, a corporation may take property, which is reasonably necessary for its legitimate business, in payment for its stock, but when so received the property must be taken at its reasonable monetary value. Although a margin may be allowed for an honest difference of opinion as to value, a valuation grossly excessive,

knowingly made, while its acceptance may bind the corporation, is a fraud on creditors and they may proceed against the stockholder individually, who sells the property, as for an unpaid subscription. *Lloyd v. Preston,* 146 U. S., 630. All the authorities are collected in 26 Am. & Eng. Enc. (2 Ed.), 1013.

Applying the settled principles of law to the facts of this case as found by the jury, we have no hesitation in holding that the defendants Ehlen, McElwee and Hickerson are liable for their unpaid subscription to the capital stock of the bankrupt corporation to the extent that it is necessary to pay the just claims of its creditors. If it should turn out that the judgment rendered against these defendants is larger than is necessary for such purpose, it may be corrected in the future and the necessary order made upon petition to the Superior Court.

Affirmed.