Action by the receivers of the Carolina Ice Company, insolvent, to recover of defendant, as holder and owner of 62 1/2 shares of stock, $100 *Page 382 
each, in said corporation, 31 1/4 shares being on original subscription, issued July, 1908, and 31 1/4 by reason of a stock dividend, issued 11 February, 1909, the claim being that nothing of value had been paid on either issue. The defendant having denied liability, issues were submitted and responded to by jury as follows:
1. Are the 31 1/4 shares of stock of the Carolina Ice Machine Company mentioned in the third paragraph of complaint, held by the defendant, unpaid, as alleged in the complaint? A. Yes.
2. Are the 31 1/4 shares of stock of the Carolina Ice Machine Company mentioned in the fourth paragraph of the complaint, held by the defendant, unpaid, as alleged in the complaint? A. Yes.
3. In what amount is the defendant indebted to the plaintiffs on account of said unpaid stock? A. $6,250, with interest from 11 February, 1911.
(468) At close of testimony, the court charged the jury that if they believed the evidence they would answer the issues for plaintiff. Verdict was rendered as stated. There was judgment on verdict, and defendant excepted and appealed, assigning for error certain rulings of the court on questions of evidence, the charge of the court as given, and the judgment rendered.
After stating the case: The decisions of this State are to the effect, and the position is in accord with doctrine prevailing in other jurisdictions, that the capital stock of a corporation, including unpaid indebtedness for stock issued and held by the stockholders, shall, if required, be considered a trust fund for the creditors; that, under ordinary conditions, persons having business dealings with the companies have a right to suppose that this capital stock has been paid in, in money or in money's worth, and in case of insolvency any unpaid balance may, by proper proceedings, be made available to the extent required for the settlement of outstanding claims. Pender v. Speight, 159 N.C. 612; McIverv. Hardware Co., 144 N.C. 478; Hobgood v. Ehlen, 141 N.C. 344; Bank v.Cotton Mills, 115 N.C. 507; Hill v. Lumber Co., 113 N.C. 174; Clayton v.Ore Knob Co., 109 N.C. 385; Foundry Co., v. Killian, 99 N.C. 501; Fogg v.Blair, 139 U.S. 118; Handley v. Stultz, 139 U.S. 417; Sawyer v. Hoag,84 U.S. 610.
In applying the doctrine, where payment in property is permissible and has been attempted, the question frequently occurs as to the principle upon which the liability of the stockholder may be made to rest. Some of the courts administer what is not inaptly termed the "true *Page 383 
value" doctrine, and hold the stockholder to the difference between the par value of the stock and the true value of the property in money, and this regardless of the question of fraud (10 Cyc., 473), while others have maintained the "good faith doctrine," referring the question primarily and very largely to the decision of the corporate authorities having charge of the matter when they have exercised their honest judgment in making the valuation. Whatever may have been the leanings of our former decisions, this view must now prevail with (469) us, our statute making provision on the subject as follows:
"Nothing but money shall be considered as payment of any part of the capital stock of any corporation organized under this chapter, except as herein provided in case of the purchase of property or labor performed, and no loan of money shall be made to a stockholder or officer thereof; and if any such loan be made, the officers who make it, or assent thereto, shall be jointly and severally liable, to the extent of such loan and interest, for all the debts of the corporation until the repayment of the sum so loaned.
"1161. Any corporation formed under this chapter may purchase mines, manufactories, or other property necessary for its business, and issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be full-paid stock, and not liable to any further call, neither shall the holder thereof be liable for any further payment under any of the provisions of this chapter; and in the absence of actual fraud the judgment of the directors as to the value of the property shall be conclusive; and in all statements and reports of the corporation to be published or filed, this stock shall not be stated or reported as being issued for cash paid to the corporation, but shall be reported in this respect according to the facts."
While some of the courts, sustaining the position that actual fraud is required to charge a stockholder who has paid for his stock in property, have held that a "gross and obvious overvaluation of property" is strong evidence of fraud (Coit v. Amalgamating Co., 119 U.S. 343), and our own Court, going further, has held that a valuation grossly excessive and knowingly made may be conclusive on this subject. (Hobgood v.Ehlen, supra, a decision made since the enactment of the statute and well supported by authority, 2 Clark Marshall on Corporations, p. 1215; Coleman v. Howe, 154 Ill. 458; Land Co. v. Birmingham,92 Ala. 407), we think that the principles embodied in the statute, by correct interpretation, are against the rulings of the lower court as presented in the record. On the hearing it was made to appear (470) that Casper W. Miles was the patentee and owner of two letters patent for improvements in "compressors for ice machines," and that, on or about 30 June, 1908, the Carolina Ice Machine Company was formed *Page 384 
by defendant, C. L. Alexander, J. Reed Curry, and S. S. Miles, brother of the patentee, for the purpose of manufacturing and selling ice and refrigerating machines, with a capital stock of $25,000, $12,500 of which was preferred and $12,500 of which was common stock at par value of $100 per share; that 62 1/2 shares of common stock was issued to S. S. Miles, 34 1/4 to J. Reed Curry, and 31 1/4 to defendant C. L. Alexander; that shortly thereafter S. S. Miles, acting under a power of attorney from Casper W. Miles, assigned said patents to the corporation, and the manufacturing and sale of the machines in the States of North and South Carolina were entered upon and conducted until 28 September, 1910, when, on proceedings instituted, the corporation was placed in the hands of receivers, the plaintiffs in the present suit; that on or about 11 February, 1909, pursuant to a resolution of the company, reciting adequate profits, a stock dividend was declared, and under the same there was issued to the defendant C. L. Alexander 31 1/4 additional shares of stock, etc.
These facts having been shown, the defendant offered evidence tending to prove that the original stock held by him should be properly considered and dealt with as paid-up stock, the same having been issued and applied in the purchase of the patents, assigned by Miles to the company and under which the business had been carried on.
The evidence in question, by parol and by entries in the corporation journals, was to the effect that the common stock to the full amount of $12,500 was issued and applied, as stated, for the patents in question, and that 31 1/4 shares had been issued to defendant Alexander, under an arrangement for value with the owner, and that this had been done by corporate action in which the patents had been formally valued and resolutions passed directing that the patents be purchased for the full amount of the common stock, and that if such action and resolution (471) were not on the books of the company, it should have been; a witness stating his recollection of the resolution as follows: Resolved, That the Carolina Ice Machine Company purchase patent rights for North and South Carolina from S. S. Miles and give him therefor $12,500 of common stock for the patent." There was also evidence tending to show that, at the time of this purchase, the patent was fully worth the amount paid for it, $12,500, and was now a right of considerable value.
The plaintiff having offered the minute-book of the company, purporting to give the minutes of the first meeting of the stockholders and board of directors and which failed to disclose or make any reference to the transaction, as claimed by plaintiff, the evidence referred to was excluded by the court or held to be of no effect upon the issue, and in this we think there was error. There does not seem to be requirement *Page 385 
that any memorandum as to the formal valuation should be made and entered on the minutes, and, if it were otherwise, there could hardly be a more formal expression given than a resolution of the company that the patents be purchased for the full amount of the common stock. Undoubtedly, a transaction of this character should be pursuant to corporate action, but, if such action was held, it would not be rendered invalid because it was, by inadvertence, omitted from the minutes. Handley v. Stultz, supra.
It was further contended that "patent rights for North and South Carolina were not worth the par value of the $12,500 of stock and could not be treated as payment for the same." There are, assuredly, well-considered cases to the effect that an untried and worthless patent may not be considered as a valid payment for a stock subscription, but these will be found in jurisdictions which hold to the "true value" doctrine, or to have been rendered on facts widely variant from those presented here. As the case goes back for a new trial of the issue, it is not desirable to dwell upon the evidence at any great length, but, while there is testimony tending to support plaintiff's position, there are also facts in evidence tending to show that these patents, made the basis of the enterprise, were of real value, and, at the time of the transaction, the business gave good promise of substantial returns. There was further testimony on the part of the defendant tending to show that the embarrassment which attended the effort and which resulted in (472) insolvency could well be attributed to the use of poor material in the manufacture and to mismanagement in the conduct of the business, particularly on the part of the agents intrusted with the sales, rather than to any defect in the device or the process by which it was protected, and that the patent was and is now a very valuable one. In such case the authorities favor the position that the patent should be considered as property and the facts concerning it should be heard by the jury. Kimballv. Brick Co., 119 Fed., 102; Nail Co. v. Spring Co., 142 Mass. 349;Whitehill v. Jacobs, 75 Wis. 474.
Again, it was insisted that no rights were acquired by the company, because S. S. Miles, acting under a power of attorney from his brother, the patentee, had no right to sell for stock, and that he was acting in capacity of dual agent, etc. These considerations might be given weight if Casper Miles, the owner of the patent, were moving in the matter, but cannot avail in this transaction, where the patents were formally assigned and have been used by the company since, and are now held as part of its assets.
On perusal of the record, we are clearly of opinion that the evidence offered should be received and submitted to the jury on the question whether the 31 1/4 shares of original issue are held by defendant as paid-up stock. *Page 386 
In reference to the dividend stock, 31 1/4 shares of which are also held by defendant, this is a method not infrequently resorted to for the purpose of distributing the profits of a corporation among its stockholders, and, where the total amount of stock is kept within the charter limits and the profits have been really earned, it is considered in this country as legitimate and, at times, not undesirable. 2 Cook on Corporations (6 Ed.), sec. 536; Thompson on Corporations, sec. 5274. As shown inTrust Co. v. Mason, 152 N.C. 660, a holder of such stock has withdrawn nothing from the corporation nor in any way depleted its assets, and accordingly, being issued as paid-up stock, the transaction cannot be assailed by an existent creditor nor by one who has been informed of the circumstances. Handley v. Stultz, supra; Clark on Corporations, (473) pp. 368, 369. It is, however, properly regarded as an increase of the capital stock, and, as subsequent creditors, the holder of such stock may be held accountable, and very much on the principle which obtains here in regard to stock of original issue. If issued in good faith, it may not afterwards, as a rule, be successfully questioned. In this connection, it should be borne in mind that a recognition of the good faith rule does not at all mean that the matter is referred absolutely to the action of the directorate or other managing agents of the company. These officers are supposed and are held to act with good sense and reasonable business prudence. In 10 Cyc. the author, speaking to this question, has said: "It has been held that the belief that a prudent and sensible business man would hold in the ordinary conduct of his own business affairs is what constitutes good faith in the valuation of property for which the stock of a corporation is issued"; and, if they have declared a dividend and issued stock for it by an excessive overvaluation of property or by an excessive and entirely unwarranted estimate of the profits or the unearned increment, this would be evidence from which fraud could be inferred, and, in extreme cases, it might, as we have seen, be regarded as conclusive. While the good faith rule will be administered here in the light of these principles, the fact remains that, under our statute and according to well-considered decisions, obtaining here and elsewhere, in order to charge a stockholder with further liability, who has received his issue by way of a dividend as paid-up stock, actual fraud must be established, and, in consideration of all the facts in evidence, we are of opinion that the question of defendant's liability as to this dividend stock must also be referred to the jury.
It may be well to note that we are considering the case of a corporation embarrased with debt and where the stockholders have taken stock dividends with notice and even knowledge of all the circumstances, and the question of an increase of capital stock issued by a corporation which is a going concern, and apparently prosperous, is in no way presented. *Page 387 
In such case it has been held that within its chartered limits a company may, under some circumstances, issue stock as paid up "at its market value instead of its par value, and, if the transaction is in good faith, the holders will not be held further liable to creditors." (474)R. R. v. Harress, 128 Fed., 321; Handley v. Stultz, supra; Clark on Corporations, 368; 2 Purdy's Beach on Corporations, pp. 654-655.
It was contended for defendant that he was entitled to insist on a counterclaim by reason of an indebtedness existent in his favor against the company at the time of proceedings instituted, but, under our decisions and on the insolvency of the company and the appointment of receivers, the defendant's claim is lacking in one of the essentials of a valid counterclaim, that the parties, debtor and creditor, must claim in the same right. The receivers now claim for creditors, and defendants are only entitled to an offset to the extent of the dividend declared, and this was awarded him in the judgment as now rendered. Smith v. French, 141 N.C. 1-7;Pate v. Oliver, 104 N.C. 458. For the reasons heretofore stated, we are of opinion that defendants are entitled to a new trial of the issues, and it is so ordered.
New trial.