[No. 19439.  *En Banc.*  July 31, 1926.]

THE STATE OF WASHINGTON, *Respondent,* v. WALLA WALLA FRUIT GROWERS, INCORPORATED, *Appellant.*[1]

[1] PARTNERSHIP (3)—COMMUNITY OF INTEREST—SHARING PROFITS AND LOSSES. A contract between a fruit growers association and an oil and fuel company does not create a partnership between them, but rather the relationship of principal and agent, where it provided that the growers association was to receive a fixed compensation of two cents per gallon on all fuel handled by it, without any power to fix the price, and there was no provision that it was to share in the profits and losses in its distribution of oils imported into the state by the fuel company.

[2] SAME (3-1)—COMMUNITY OF INTEREST—IN CAPITAL EMPLOYED. In such a case, there is no community of interest in the capital employed, where the tanks, buildings, and equipment used in the business were provided by the oil company and the growers association was to furnish only the amount required to "finance" the purchase of oil; the term "finance" negativing a partnership relationship and indicating a loan, and that it was a creditor for the sum advanced.

[3] SAME (3-2)—COMMUNITY OF POWER IN ADMINISTRATION. In such a case, the fact that there was no partnership is further indicated by the fact that the fuel company had the entire and sole management of the enterprise, making the purchases, appointing the agents, incurring the liabilities, fixing the price and making all contracts.

[4] JOINT ADVENTURES (2)—EXISTENCE OF RELATION. Where a contract of employment or agency had none of the elements of a partnership there was no joint adventure rendering the agent or employee of a fuel company liable for the contracts of its employer or for the excise tax due to the state for the distribution of the fuel (TOLMAN, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., dissenting).

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered January 2, 1925, upon findings in favor of the plaintiff, in an action for the recovery of an excise tax, tried to the court. Reversed.

[1]Reported in 248 Pac. 54.

*Rader & Bean,* for appellant.

*The Attorney General, R. G. Sharpe, Assistant,* and *Chas O. Flint,* for respondent.

MACKINTOSH, J.—Subdivision (c), § 1, ch. 173, of the Laws of 1921, p. 669 [Rem. Comp. Stat., § 8327], defines a distributor of liquid fuel to be one "who imports and sells such liquid fuel into this state." The act thereafter provides that a distributor shall pay to the state an excise tax of one cent per gallon on all liquid fuels sold by it.

This action was begun against the appellant, which we shall hereinafter call the "growers company," and the Farmers Fuel & Oil Company, which we shall hereinafter call the "oil company," to collect approximately $600, being the excise tax claimed on liquid fuel handled by the two defendants. The trial court found that the two defendants had entered into a contract, by virtue of which they had imported into this state and sold a certain quantity of liquid fuel. From this finding, the court concluded that each of these defendants was a distributor, as defined by ch. 173, Laws of 1921, p. 669, and were jointly liable for the tax, and entered judgment against them jointly. From this judgment, the growers company alone has appealed.

The matter presented is, whether the contract between the growers company and the oil company was a contract of partnership or not. If it was a contract of partnership, the judgment must be affirmed. If it was not such a contract, and the relationship established is that of principal and agent, or employer and employee, the judgment must be reversed, in order that there will be no liability on the growers company.

The contract contains these material elements: That the growers company leased to the oil company sufficient ground upon which to erect and maintain stor-

age tanks for the purpose of storing oil, gasoline, etc. This property was leased for a period of five years, with the privilege of renewal for a like period, the oil company agreeing to pay one dollar a year as rental. The growers company reserved the right to cancel the lease, at any time that the business of the oil company was insufficient in volume to warrant the growers company in performing the services relative to the distribution of liquid fuel, as further provided for in the contract. The growers company agreed "to finance the purchase in car lots of all gas, distillate and oil required by and which may be purchased by the" oil company; to unload the liquid fuel from shipping cars or tanks and into the storage tanks of the oil company; to "sell the same for cash for the second party (oil company) to such classes of customers as the second party shall designate"; and to keep books, make collections, properly conduct the business and render all services necessary in connection with the delivery and distribution of the oil and products kept for sale, with the provision that the growers company should not, at any time, be required to "finance" more than three cars of gas or distillate; that the growers company was to conduct all this business for the fixed charge of two cents per gallon, and was to collect, in addition, such sum as the oil company might designate, "to the end that the second party may secure sufficient revenue with which to pay interest on its capital stock, taxes and other incidental expenses." The growers company further agreed that it would not order oil or other product from any other company, or distribute the same for any company, other than the oil company. It was further agreed that the growers company should not be held responsible on account of non-delivery of any goods ordered, or on account of the quality or test

of any goods, and that the oil company should fully "protect its property, including all oil and gas on hand," by insurance. The growers company further agreed to account to the oil company, from time to time, for all sums collected over and above the fixed charges and amount necessary to cover shrinkage.

[1] The respondent, of course, claims that the terms of this contract measure up to the requirements necessary to constitute a partnership, and specifies those requirements as being, first, a community of interest in profits and losses; second, a community of interest in the capital employed; and third, a community of power in administration.

Assuming that all that is necessary to constitute a partnership is a community of interest and power in the three particulars mentioned, an examination of this contract must disclose that these essential elements are not therein provided for. Considering first the interest in the profits and losses: Nowhere in the contract is there any provision that the growers company and the oil company shall share in the losses, if any; nor does the contract provide for a distribution in any ratio of the possible profits. The growers company was to receive a fixed compensation of two cents per gallon on all the product handled by it, and, as we read the contract, this compensation was to be paid, irrespective of the fact as to whether any profit had been made or not in the transaction. The power to fix the price, at which the product was to be sold, rested in the oil company, but out of the price received the growers company was to receive a fixed compensation. The fact that the growers company had a right to withdraw from the contract and cancel it, is no evidence of a partnership, but, rather, it was a provision made for the growers company's protection, in that it allowed it

to withdraw, if the two cents per gallon compensation proved unsatisfactory, or any other reason developed which convinced the growers company that the contract was no longer satisfactory to it.

[2]  Next arises the question, whether there was any community of interest in the capital employed. The tanks, buildings and equipment used in the conduct of the business were owned exclusively, so far as the contract provided, by the oil company. The only capital employed in the enterprise, which under the contract could be said to be furnished by the growers company, was the amount which it should furnish in financing the purchase of the liquid fuel. But the use of the word "finance" is a strong circumstance negativing the idea of a partnership. "To finance" means to loan. *Hobgood v. Ehlen,* 141 N. C. 344, 53 S. E. 857. If the contract had provided that the growers company should contribute money to the enterprise, it might very well be taken to mean, that the two parties to the contract were entering into a partnership where they had a community of interest in the capital. But where the contract provides that one party shall finance the purchase of a product, that means nothing more than that that party will loan the amount necessary, which will be repaid to it. The fact that no time is set, nor manner provided, for the repayment, does not alter the relationship of the parties. The growers company, therefore, having no interest in any of the capital employed, and being, at most, a creditor as to money which it loaned, the essential element in regard to interest in capital necessary to create a partnership seems to be lacking.

[3]  The final requisite of partnership, that is, a community of power in the administration, is not met by the terms of this contract. The oil company had the entire direction and management of the enterprise.

The oil company had the right to make the purchases, designated the persons to whom the product should be sold, fixed the price, incurred all the liabilities, had exclusive power to make contracts, and denied the growers company the right to order or purchase from, or distribute for, any company other than the oil company. As a matter of fact, the power of administration accorded to the growers company by this contract was a great deal less than that ordinarily given to an agent. It had no power given it to generally conduct the business. The contract in effect appointed the growers company an agent of the oil company to perform certain specific services, for which it was paid at the rate of two cents per gallon of liquid fuel sold.

Tested, therefore, by the standards set up by the respondent, this contract must be said to fall far short of establishing the relationship of partnership between the parties to it.

Respondent, however, cites the case of *Styers v. Stirrat & Goetz Inv. Co.*, 65 Wash. 676, 118 Pac. 896, in support of the argument that the contract in the case at bar, like the contract considered in that case, created a partnership between the contracting parties. In the *Styers* case, there were four elements in the contract which this court held were sufficient to create a partnership. The first was that there had been a contribution of money by one of the parties, to be used in the venture, without any provision for its repayment. We have already noted the difference between the putting of money into an enterprise and the financing of purchase. In the case at bar there was no contribution, but there was, as we have said, a loan. Secondly, it was held in the *Styers* case, that the control of the business by the party who was ultimately held to be a partner exceeded the control exercised by

the other party to the contract. In the case at bar, the situation is exactly the reverse. The third and fourth features of the contract, which the court held pointed to a partnership, were equal allowance between the parties for personal services and the sharing of the profits. We have already said that, under the contract in the case at bar, there is no provision for a sharing of profits and there is no equal allowance between the parties for their services.

[4] Viewed in the light of the rules contended for and the authorities relied on by the respondent, this contract does not furnish a basis for holding that the parties to it were partners. Nor does the contract present a condition which is known as a joint adventure. On the other hand, it is a contract either of employment or agency. For that reason, the trial court was incorrect in holding the two parties to the contract jointly liable to the state for the payment of excise taxes as distributors of liquid fuel. The judgment is therefore reversed as to the appellant, Walla Walla Fruit Growers, Inc.

PARKER, ASKREN, MITCHELL, and BRIDGES, JJ., concur.

TOLMAN, C. J. (dissenting)—I agree that there was here no partnership and that perhaps, strictly speaking, in an action between the contracting parties it might be held that they were not even engaged in a joint adventure. Yet, even so, by the joint use of their organizations and by their combined activities, liquid fuel was imported into the state and sold, and that, as I see it, is enough to make them both liable to the state for the excise tax.

I therefore dissent.

FULLERTON, MAIN, HOLCOMB, JJ., concur with TOLMAN, C. J.