JAMES PENDER, RECEIVER OF THE EDGECOMBE HARDWARE COMPANY, v. W. L. SPEIGHT, F. J. MURDOCK, T. W. RIDDICK, AND F. G. DAVIS.

(Filed 25 September, 1912.)

1. **Sales—Merchandise in Bulk—Statutes—Constitutional Law.**
    Chapter 623, Laws 1907, being "An act to prohibit the sale of merchandise in bulk in fraud of creditors," is not unconstitutional or void as an unwarranted limitation of the right to sell and dispose of property.

2. **Corporations — Directors — Advantages — Trusts and Trustees— Creditors—Shareholders.**
    It is the duty of the directors of a corporation, as trustees of its property for the benefit of its creditors and shareholders, to administer the trust for the mutual benefit of the parties interested, and for them to receive therein an advantage to themselves not common to all is a plain breach of the trust imposed.

3. Corporations—Shareholders—Retiring Stock—Debtor and Creditor.

An agreement made by the shareholders of a corporation, between themselves, to retire any of its stock before settling with the corporation's creditors, is void as against the rights of the unpaid creditors.

4. Corporations — Directors — Insolvency — Knowledge Implied — Debtor and Creditor—Trusts and Trustees—Advantages—Credit —Sale of Entire Assets.

The law charges the directors of a corporation with actual knowledge of its financial condition, and holds them liable for damages sustained by stockholders and creditors by reason of their negligence, fraud, or deceit; and where a corporation is insolvent, and the directors retire certain portions of their shares of stock therein and receive therefor credits on obligations due by them to the corporation, and sell the entire assets by resolution passed, to one of them, participating therein, at a reduced price, the transaction is void on its face, as against creditors and other shareholders, notwithstanding the directors were unaware of its insolvency.

APPEAL by defendant from *Carter, J.,* at June Term, 1912, of EDGECOMBE.

Civil action. The plaintiff moved for judgment upon the admissions in the pleadings. The court gave judgment that the plaintiff recover of the defendants Speight and Murdock all the stock of goods, etc., described in the complaint, and further, that the plaintiff recover of the defendant Murdock the sum of $1,000, with interest from 9 January, 1912, and that the cause be retained for further orders. The defendants appealed.

*W. O. Howard, H. A. Gilliam, and J. M. Norfleet for plaintiff.*

*G. M. T. Fountain & Son for defendants.*

BROWN, J. It appears from the admissions in the complaint and answer that the Edgecombe Hardware Company was a corporation with a capital stock of $6,000; that the defendant Speight was the president, Riddick the vice president, and Murdock secretary, and all were directors; that on 9 January, 1912, the said corporation was insolvent; that on 27 March,

1912, the next and last meeting of the directors, the entire stock of goods, furniture, and fixtures and all the property of the corporation were sold to the defendant Murdock for $4,144.70, purporting to be 60 per cent of their actual value, and this was done by resolution of the directors, the said Murdock being present and participating.

It further appears that the said directors passed a resolution on 9 January, 1912, to retire a portion of the capital stock of this insolvent corporation, and in pursuance thereof the defendant Speight surrendered ten shares of the capital stock, standing in the name of Ethel Speight, and credited his account with $1,000, he then owing the Hardware Company $1,161; that F. G. Davis, on said date, surrendered five shares of the capital stock held by him, and caused the account of F. G. Davis and wife, Addie, which amounted to over $600, to be credited with the sum of $317.63; and that on said date the defendant Murdock surrendered ten shares of the capital stock held by him, and received therefor $1,000 in cash.

These are the salient facts admitted in the pleadings.

We will first consider the judgment of the court for the recovery of the stock of goods. It is not pretended that the defendants made any pretense to comply with the provisions of chapter 623, Laws 1907, entitled "An act to prohibit the sale of merchandise in bulk in fraud of creditors."

The learned counsel for the defendant argued with much earnestness that the said act was unconstitutional and void as an unwarranted limitation of the right to sell and dispose of property. We think this point has been decided adversely to him by the Supreme Court of the United States in *Lemieux v. Young,* 211 U. S., 489, in which a statute very similar to ours was upheld. The States of Mississippi, Michigan, Washington, Indiana, Nebraska have statutes similar to ours which have been sustained by the highest courts of these States.

But it is not necessary to consider the statute in this case. The conduct of the defendants was such as to render the sale to one of the directors of the company absolutely void under the general principles of law. In this case the bargainor and the bargainee were officers and directors of the company, and they

knew that the company was heavily in debt, and that they were disposing of its entire property, without reference to the interest of creditors or stockholders, at 60 per cent of its actual value.

Directors of a corporation are trustees of the property of the corporation for the benefit of the corporate creditors, as well as shareholders. It is their duty to administer the trust assumed by them, not for their own profit, but for the mutual benefit of all parties interested; and when such directors receive an advantage to themselves not common to all, they are guilty of a plain breach of trust. 1 Beach Pr. Corp., sec. 241; 2 Story Eq. Jur., sec. 1252; *Drury v. Cross,* 7 Wall., 299; *Hill v. Lumber Co.,* 113 N. C., 172; Harvey's Rights of Minority Stockholders, 13; and *McIver v. Hardware Co.,* 144 N. C., 485. In the *Hill case* it was held that a confession of judgment by an insolvent corporation in favor of a director who is a creditor, and upon a debt theretofore existing, is void as against other creditors.

It is said in behalf of these defendants that they did not know on 9 January, 1912, that the corporation was insolvent. The sale of the goods was made on 27 March, 1912, when it is perfectly patent from the defendants' answer that they knew that the corporation could not pay its debts, and the means that they were devising for paying off the indebtedness of the company was to sell out its entire assets at 60 per cent in the dollar to one of their number.

The answer discloses the fact that even on 9 January, 1912, these defendants knew that the corporation was not in a healthy condition, and that it was about to expire from inanition. The treatment which these financial doctors undertook to give to the patient soon put an end to it. They were evidently physicians of the old school, and, as said by the counsel for the plaintiff, believed in curing disease by purging and bleeding instead of nourishment. After this drastic treatment, insolvency naturally followed.

The defendants were evidently not educated in the modern school of high finance, and the crudeness of their methods would have made a high priest of that school blush. They

went at the thing in a very direct manner, and appropriated to their own use without any scruples the entire property of the corporation, whose interests they had undertaken to guard.

But it is not necessary that 'they should admit knowledge of insolvency. The law charges them with actual knowledge of the financial condition of the corporation (*Soloman v. Bates,* 118 N. C., 311), and holds them liable for damages sustained by stockholders and creditors by reason of their negligence, fraud, or deceit.

The defendant Murdock appeals because his Honor gave judgment against him for $1,000, the cash he had taken out of the treasury of the company in payment for his apparently worthless stock. The resolution to retire the stock of an insolvent corporation and to take money out of its treasury for that purpose was a very novel method of sustaining the credit of the corporation, to say the least. But as this money found its way from a depleted treasury into the pockets of the directors, the motive for passing the resolution at the January meeting is very apparent.

An insolvent corporation cannot buy in its own stock, and if it becomes insolvent after such purchase, the stockholder is held liable to the creditor for 'the purchase money received by him. *Heggie v. Building and Loan Assn.,* 107 N. C., 581.

It is generally held that a corporation cannot settle with its members by the application of assets to the retirement of their stock until it has first discharged all of its liabilities, and any agreement looking to such arrangement among its shareholders is void as to creditors. It will be the duty of the receiver to proceed against the other directors and stockholders who have undertaken to retire their stock by having it credited on their debts to the corporation. Such transaction is fraudulent and void on its face, and cannot be sustained.

The judgment of the Superior Court is
Affirmed.