PARK TERRACE, INC. v. R. G. BURGE AND LAWSON LESTER, JR.

(Filed 14 January, 1959.)

**1. Corporations § 18—**

Where the directors of a corporation are the owners of all of its A and B stock, neither the corporation nor the holders of its A stock can complain of the repurchase by the corporation for retirement of all of its B stock, since the only effect of such repurchase is to decrease the value of the equity represented by the A stock, the rights of creditors not being involved.

**2. Corporations § 12—**

A purchaser of stock in a corporation cannot complain of alleged mismanagement of the corporation occurring prior to his purchase.

**3. Same: Corporations § 1—**

This suit was instituted by a corporation against its prior stockholders and directors for alleged wrongful repurchase and retirement by the corporation of its stock. *Held:* There being no creditors whose rights were affected, recovery by the corporation would inure to the benefit of its present stockholders only and since the present stockholders may not recover for alleged mismanagement occurring prior to the time of their purchase of the stock, equity will look to the substance and not the form, and will not permit a recovery in the name of the corporation for their benefit.

APPEAL by plaintiff from *Johnston, J.*, 10 February Term, 1958, of FORSYTH.

This is an action instituted to recover $221,000 with interest at six per cent from 4 November 1950, by reason of the alleged improper and illegal sale by the defendants to the plaintiff of certain shares of stock issued by the plaintiff and held by the defendants.

The facts essential to the disposition of this appeal are hereinafter stated.

1. Sometime in October 1949 the defendants, together with one W. B. Pollard, as incorporators, caused to be incorporated a corporation known as Park Terrace, Inc. for the purpose of developing a housing project, to be financed through a loan insured under the Federal Housing Act by the Federal Housing Administration.

2. At the time of the organization of Park Terrace, Inc., each of the incorporators as hereinabove set out subscribed for 100 shares of its Class A common stock, hereinafter referred to as A stock, of the par value of $1.00 per share, and 41,097 shares of the Class B common stock, hereinafter referred to as B stock, of the par value of $1.00 per share, each agreeing to pay to the corporation the sum of $100.00 for his 100 shares of the A stock; and each agreeing to pay to the corporation the sum of $41,097 for his 41,097 shares of B stock; and Leif Valand, who was employed as architect for the housing project, according to the evidence admitted in the hearing below, was to receive $79,151 for his services, of which amount $9,000 was to be paid in cash and the balance by issuing to him 70,151 shares of B stock.

3. Immediately after the defendants and W. B. Pollard completed the organization of Park Terrace, Inc., the incorporators caused to be issued to themselves, W. B. Pollard and Leif Valand, A stock and B stock as hereinabove set out. No payments were made by any of these parties to the plaintiff in connection with the issuance of the B stock, but the defendants did cause an account receivable to be set up and charged to the defendants and to Pollard and Valand for the purchase price of the B stock issued to each of them.

4. Thereafter, Leif Valand was paid the sum of $9,000 in cash on his fee for services to the corporation as architect. The said Leif Valand, on 15 October 1949, three days after the B stock was issued to him, offered to sell his 70,151 shares of B stock to the corporation for the sum of $500.00 cash, stating that the sum of $500.00, together with the $9,000 already paid to him, would fully compensate him for his services; that the directors of the corporation, consisting of the two defendants and the said W. B. Pollard, at a duly called meeting of the said directors, passed a resolution in which they declined

to accept the offer to purchase the stock by the corporation on the ground that the corporation was not in financial position to make the purchase, but the two defendants agreed to purchase the said stock in their own names for the total sum of $500.00, and directed the secretary, who was the defendant R. G. Burge, to transfer the said 70,151 shares of B stock on the corporation's books to the defendants in equal shares.

5. In March or April 1950, the defendants approached the said W. B. Pollard and suggested that he transfer the 41,097 shares of B stock held by him to the defendants in equal shares; that the said 41,097 shares held by W. B. Pollard were transferred to the defendants in equal shares by the said W. B. Pollard; that the said W. B. Pollard had never paid the corporation for any part of said stock, and the said W. B. Pollard at that time owed the corporation for said stock the sum of $41,097.

6. Pursuant to this transaction the obligation of the said W. B. Pollard to the corporation in the sum of $41,097 for the purchase price of this stock was canceled by a credit to his account with the said corporation for that amount, and the indebtedness to the corporation of W. B. Pollard was transferred to the accounts of the defendants by charging one-half of said amount to each of the defendants herein.

7. That the acquisition of the B stock originally issued to Leif Valand and W. B. Pollard by the defendants made them the sole holders of all the B stock of the corporation, aggregating 193,442 shares.

8. After these defendants purchased the Valand stock the corporation caused the transfer of $70,151 from accounts receivable to the cost of building, thereby, in effect, canceling the charge against Valand but charging the construction cost of the project as though Valand had been paid the balance of $70,151 in B stock for his services, as originally contemplated.

9. The preferred stock authorized by the charter of the plaintiff consisted of only 100 shares of the par value of $1.00 per share and was issued to and still belongs to the Federal Housing Administration, hereinafter designated as FHA. This stock was a device by which the FHA, in the event of default in the mortgage executed by the plaintiff on its apartment housing development to secure a construction loan in the sum of $1,632,000, insured by the FHA, could step in and control the corporation.

10. On 4 November 1950, the defendants owed the plaintiff corporation for the B stock issued directly to them, and by reason of their assumption of the obligation of W. B. Pollard for the purchase of his B stock transferred to them, the total sum of $123,291.

11. All the B stock issued and outstanding, being 193,442 shares,

and having a par value of $1.00 per share, was purchased by the corporation from the defendants Lester and Burge, pursuant to the approval of the board of directors of the corporation at a meeting held on 4 November 1950. Mr. Pollard, the president of the corporation, presided at the meeting, and Mr. Lester and Mr. Burge were present; these three constituted the board of directors of the plaintiff corporation. The B stock was purchased by the corporation for $221,000 and retired by the unanimous action of the board. The board of directors ordered the capital account to be reduced pursuant to the retirement and cancellation of the 193,442 shares of B stock. At the time of this meeting the defendants and W. B. Pollard not only constituted the board of directors of the plaintiff corporation but they owned all the A stock of the corporation. The only stockholders authorized to vote at a meeting of the stockholders were those who held A stock, unless the corporation should default in its payments on the mortgage insured by the FHA.

12. The charter of the corporation provided that the B stock could be retired without notice to the preferred stockholders after completion of the project and when other conditions had been met in connection with the FHA loan, the details of which are immaterial here.

13. After deducting from the purchase price the amount due the plaintiff corporation by the defendants on the purchase price of the B stock in the sum of $123,291, and other items due the corporation by the defendants in the sum of $6,339, making a total of $129,630, the corporation paid the defendants in cash the balance of $91,370.

14. The plaintiff stipulated in the court below, " * * * that as of November 3, 1953, there was no stockholder, aside from FHA's preferred stock, who was a stockholder on November 4, 1950, and that there is no stockholder of Park Terrace, Inc. today, except FHA, who was a stockholder on November 4, 1950; that as of today, except for the mortgage, there is no outstanding obligation carrying over from November 4, 1950, no outstanding indebtedness existed on the day this suit was brought, November 3, 1953, carried over from November 4, 1950, except the mortgage indebtedness."

15. M. P. McLean, Jr. purchased from these defendants and W. B. Pollard and J. A. Bolich, Jr., all of the shares of the A stock of the plaintiff corporation, on or about 15 February 1951. (For a full statement of the circumstances surrounding the purchase of this stock see *Lester v. McLean* and *Burge v. McLean,* 242 N.C. 390, 87 S.E. 2d 886.)

16. The record discloses that the FHA has been furnished a financial statement of the plaintiff corporation annually, which statements after 4 November 1950 disclosed the retirement of the B stock and

the capital adjustment made pursuant thereto. There is no evidence tending to show that the FHA ever protested or objected to the retirement of the B stock or that it has ever asserted its right to control the corporation through or by virtue of its ownership of all the preferred stock of the corporation, or that any creditor of the corporation has ever objected to the transaction upon which the plaintiff corporation bases its right to recover in this action.

At the close of plaintiff's evidence the defendants moved for judgment as of nonsuit. The motion was sustained and judgment entered accordingly. The plaintiff appeals, assigning error.

*Dallace McLennan; Spry, White & Hamrick, and Fletcher & Lake for plaintiff.*

*Womble, Carlyle, Sandridge & Rice; Wade M. Gallant, Jr., and Broaddus, Epperly & Broaddus for defendants.*

DENNY, J. As we construe the facts revealed on the record before us, the question to be determined is not whether these defendants acted in bad faith as officers and directors of the plaintiff corporation in connection with the transactions of which the plaintiff complains; the determinative question, in our opinion, is whether or not the plaintiff corporation, in light of all the facts and circumstances revealed by the record, may maintain an action to recover the consideration paid to these defendants for the purchase and retirement of the B stock. It is difficult to understand how the payment of $221,000 for the purchase and retirement of this stock could have been for the best interest of the plaintiff corporation. Even so, we must consider the factual situation as it existed at the time of the sale of this stock to the plaintiff corporation for retirement.

These defendants and W. B. Pollard owned all the outstanding shares of A stock at the time the B stock was sold to the plaintiff corporation. Therefore, the plaintiff corporation had no stockholders with voting rights other than those who as officers and directors authorized the purchase by the corporation of the B stock from these defendants. Consequently, it would seem that neither the plaintiff corporation nor the holders of the A stock could thereafter attack the validity of the transaction unless the corporation in doing so was acting in behalf of creditors.

The A stock, upon the purchase and retirement of the B stock, represented the total value of all the assets of the plaintiff corporation, subject to the obligation of the plaintiff to the holder of its mortgage, which was insured by the FHA, and the value of the preferred stock issued to and held by the FHA, which consisted of 100 shares of the

par value of $1.00 per share or a total value of only $100.00, and other creditors of the corporation, if any.

These defendants and W. B. Pollard being the owners and holders of all the A stock of the plaintiff corporation at the time of the transaction complained of, the value of their equity in the plaintiff corporation as represented by the A stock was substantially reduced in value as a result of the purchase and retirement of the B stock. Even so, these defendants could not complain since the reduction in value of the A stock was brought about by their own acts.

Certainly, the creditors of the corporation at the time of the transaction would have had just cause for complaint and would have had the right to require the payment by the defendants of the purchase price of the B stock as originally agreed upon if such payment by the defendants had been necessary to meet the obligations of the plaintiff corporation to them. G.S. 55-65; *Foundry Co. v. Killian*, 99 N.C. 501, 6 S.E. 680, 6 Am. St. Rep. 539; *Clayton v. Ore Knob Co.*, 109 N.C. 385, 14 S.E. 36; *Cotton Mills v. Cotton Mills*, 115 N.C. 475, 20 S.E. 770; *Hobgood v. Ehlen*, 141 N.C. 344, 53 S.E. 857; *Pender v. Speight*, 159 N.C. 612, 75 S.E. 851; *Whitlock v. Alexander*, 160 N.C. 465, 76 S.E. 538. However, the stipulation entered into in the court below eliminates the necessity for any further discussion or consideration of the rights of the creditors.

Since there is no creditor of the plaintiff corporation whose claim was outstanding on 4 November 1950, except the holder of the mortgage executed by the plaintiff to secure its original construction loan, and there is no evidence indicating the mortgage was or is now in default, it is quite clear that a recovery by the plaintiff corporation would inure entirely to the benefit of the present stockholders. This being true, the plaintiff is not entitled to recover unless the present stockholders could maintain an action for prior mismanagement against the defendants and W. B. Pollard. *Home Fire Ins. Co. v. Barber*, 67 Neb. 644, 93 N.W. 1024, 60 L.R.A. 927.

To allow the plaintiff corporation to recover the consideration it paid to the defendants for the B stock would, in substance, allow the present stockholders of the plaintiff corporation to recover an amount in excess of the sum M. P. McLean, Jr., paid these defendants, W. B. Pollard and J. A. Bolich, Jr., for the A stock on 15 February 1951, to wit, the sum of $182,500. See *Lester v. McLean* and *Burge v. McLean, supra*.

In the case of *Home Fire Ins. Co. v. Barber, supra*, an individual purchased all of the corporation's outstanding capital stock, the sellers being stockholders, directors and officers of the corporation. After ownership and control had passed to the purchaser, a suit was brought

by the corporation to recover from one of the sellers on the ground of alleged prior mismanagement of the corporation's affairs. The opinion of the Court by *Pound, C.,* says: "Sound reason and good authority sustain the rule that a purchaser of stock cannot complain of the prior acts and management of the corporation (citing numerous authorities, including *Hawes v. Oakland,* 104 U.S. 450, 26 L. Ed. 827). * * * It appears to be well settled * * * that stockholders who have acquired their shares and their interest in the corporation from the alleged wrongdoer and through the prior mismanagement have no standing to complain thereof. (Citations omitted) * * * Conceding, then, that all of the present stockholders are so circumstanced that no relief should be afforded them in a court of equity, may the corporation recover, notwithstanding? We think not. Where a corporation is not asserting or endeavoring to protect a title to property, it can only maintain a suit in equity as the representative of its stockholders. If they have no standing in equity to entitle them to the relief sought for their benefit, they cannot obtain such relief through the corporation or in its own name. (Citations) It would be a reproach to courts of equity if this were not so. If a court of equity could not look behind the corporation to the shareholders, who are the real and substantial beneficiaries, and ascertain whether these ultimate beneficiaries of the relief it is asked to grant have any standing to demand it, the maxim that equity looks to the substance, and not the form, would be very much limited in its application. 'It is the province and delight of equity to brush away mere forms of law.' *Post, J.,* in *Fitzgerald v. Fitzgerald & Mallory Construction Company,* 44 Neb. 463, 492, 62 N.W. 899. Nowhere is it more necessary for courts of equity to adhere steadfastly to this maxim, and avoid the danger of allowing their remedies to be abused, by penetrating all legal fictions and disguises, than in the complex relations growing out of corporate affairs. Accordingly, courts and textwriters have been in entire agreement that equity will look behind the corporate entity, and consider who are the real and substantial parties in interest, whenever it becomes necessary to do so to promote justice or obviate inequitable results."

The distinguished jurist (later known to us as Dean Pound), concludes: "To permit persons to recover through the medium of a court of equity that to which they are not entitled, simply because the nominal recovery is by a distinct person through whom they receive the whole actual and substantial benefit, and that nominal person would, in ordinary cases, as representing beneficiaries having a right to recover, be entitled to relief, is perversion of equity. It turns principles meant to do justice into rules to be administered strictly with-

out regard to the result. It is contrary to the very genius of equity. When the corporation comes into equity and seeks equitable relief, we ought to look at the substance of the proceeding, and, if the beneficiaries of the judgment sought have no standing in equity to recover, we ought not to become befogged by the fiction of corporation individuality, and apply the principles of equity to reach an inequitable result."

In view of the fact that none of the present stockholders of the plaintiff corporation was a stockholder at the time of the transactions of which the plaintiff complains; the further fact that they obtained their shares through voluntary purchase or transfer, *Park Terrace, Inc. v. Indemnity Co.,* 243 N.C. 595, 91 S.E. 2d 584, and not by operation of law, and since the action was not brought in behalf of creditors or for the purpose of "asserting or endeavoring to protect a title to property," but solely as a suit in equity as the representative of its stockholders, it cannot be maintained. *Home Fire Ins. Co. v. Barber, supra; Hawes v. Oakland, supra; Moore v. Mining Co.,* 104 N.C. 534, 10 S.E. 679; *Park Terrace, Inc. v. Indemnity Co., supra.* Hence, the judgment of the court below is·

Affirmed.