**AERONCA, INC., Appellee,**

v.

**STYLE–CRAFTERS, INC., and Gladding Corporation, Appellants.**

**No. 73–1871.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1973.

Decided July 17, 1974.

Hunter M. Jones, Charlotte, N. C. (Jonathan N. Brownell, Montpelier, Va., Jones, Hewson & Woolard, Charlotte, N. C., on brief), for appellants.

Edgar Love, III, Charlotte, N. C. (Kennedy, Covington, Lobdell & Hickman, Charlotte, N. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and CRAVEN and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Aeronca, Inc., an Ohio corporation with a usual place of business in Charlotte, North Carolina, brought this suit

to recover $26,928.20 alleged to be due it as successor to Microtron Corporation from Microtron's former subsidiary, Style-Crafters, Inc., on an intercompany account. Gladding Corporation was named as a defendant since, after buying the stock of Style-Crafters from Microtron, Gladding dissolved Style-Crafters and received all of its assets in dissolution. Gladding has asserted two counterclaims. The first sought a recovery of $14,023.51 for breaches of warranty contained in the contract for the sale of Style-Crafters stock from Microtron to Gladding. The second counterclaim sought a recovery of $59,128.84 for adjustments Gladding claimed should be made in the intercompany account "to arrive at the proper status of the account between Mictrotron and Style-Crafters."

The district court, on September 1, 1972, granted Aeronca's motion for summary judgment against both Style-Crafters and Gladding in the amount of $26,928.20. The court also dismissed Gladding's second counterclaim seeking adjustments in the intercompany account. Gladding's first counterclaim was tried before the court which found that the breaches of warranty Gladding had shown did not amount to as much as the $12,500 deductible clause contained in the agreement. The court then ordered final judgment in favor of Aeronca in the amount of $26,778.20.[1] The defendants appeal.

## I.

The dispute between the parties has its inception in the negotiations for the sale by Microtron to Gladding of all the outstanding stock in Style-Crafters, Inc. Throughout the period of negotiations, Microtron was a North Carolina corporation with its principal office and place of business in Charlotte, North Carolina. Prior to November 5, 1969, Style-Crafters, then a wholly-owned subsidiary of Microtron, was a South Carolina corporation with its principal place of business in Greenville, South Carolina. Gladding has at all times been a New York corporation with a principal place of business in that state.

Gladding first indicated interest in purchasing Style-Crafters on about August 8, 1969 at a trade show in Chicago. Negotiations did not get serious, however, until September 25, 1969, when Microtron's president, Richard Fechhelm, and Gladding's president, J. Gerald Mayer, met at the Charlotte, North Carolina airport for a discussion of the proposed sale. At that time, Mayer was given a copy of an audited statement of Style-Crafters as of September 30, 1968. He was also shown a copy of an unaudited statement dated August 31, 1969. At the conclusion of this September 25, 1969 meeting, Fechhelm, on behalf of Microtron, made a definite proposal which Mayer, for Gladding, took under advisement. Gladding's acceptance was conditioned upon their reaching an agreement with Gregory D. Shorey to continue as president of Style-Crafters after the sale. On September 30, 1969, Mayer telephoned Fechhelm that he had come to terms with Shorey, and that Gladding would accept the Microtron proposal. Mayer then sent Fechhelm a letter agreement dated October 1, 1969 stating that Microtron would sell to Gladding all the issued and outstanding stock of Style-Crafters, Inc., for certain consideration, including: (a) Gladding's agreement to assume various debts amounting to $198,516.00; (b) delivery to Microtron of Gladding common stock having a market value of $94,000.00; and (c) payment in cash to Microtron by Gladding of $207,484.00. Fechhelm signed this agreement and returned a copy to Mayer.

Several days prior to the closing, Mayer received from Fechhelm a letter dated October 31, 1969, which stated there was a balance due Microtron of $29,474.15 on an intercompany account

---

[1] Prior to trial of the breach of warranty issues, both parties stipulated that Gladding was entitled to a credit of $150.00 against the court's judgment of September 1, 1972 for Microtron's rental of Style-Crafters' equipment after the date of sale.

it maintained with Style-Crafters. The letter further indicated that Microtron wanted an understanding that the account would be paid by Style-Crafters on or before November 30, 1969, when Microtron's fiscal year would end. Mayer declined to sign an agreement to this effect. Neither Mayer nor any other officer of Gladding attempted to investigate the nature of this intercompany account prior to closing.

On November 5, 1969, representatives of Microtron and Gladding met in Charlotte, North Carolina to close the transaction. At this meeting, Microtron produced a statement of September 30, 1969 showing, among other items, a balance due Microtron on the intercompany account from Style-Crafters of $29,472.15. Microtron's officers refused to close unless Gladding signed a letter guaranteeing payment of the account by January 5, 1970. Relying on warranties in the formal contract and various assurances given orally by Microtron's representatives, Gladding's vice-president, Walter E. Robb, III, signed the letter. At the conclusion of the November 5, 1969 closing, Microtron transferred all of the outstanding stock of Style-Crafters, Inc., to Gladding Corporation and Gladding-Style-Crafters, Inc., a South Carolina subsidiary of Gladding created for the purpose of the transfer.

Neither Gladding nor Style-Crafters made any payment on the intercompany account on or before the due date of January 5, 1970. A single payment of $2,543.95 by Style-Crafters to Microtron Abrasives, a subsidiary of Microtron, was made on January 14, 1970. Thereafter, no further payments were forthcoming. On January 28, 1970, Gladding's accounting officer, A. A. Cogan, wrote Microtron claiming breaches of warranty and errors in the intercompany account. Among these was a claim to eliminate the charge for a management fee of $37,900.00 entered August 31, 1969 on the books of Style-Crafters.[2]

On May 28, 1970, Style-Crafters, Inc., was effectively dissolved under the laws of South Carolina, and its assets were subsequently distributed to Gladding-Style-Crafters. The following year, on January 26, 1971, Gladding Corporation became qualified to do business in South Carolina. Immediately thereafter, Gladding-Style-Crafters was merged into Gladding under the laws of South Carolina and New York.

On January 21, 1971, Microtron was merged into Aeronca, Inc., an Ohio corporation. As a result of this transaction, Aeronca, the surviving corporation, succeeded to all the assets and liabilities of Microtron.

This suit was subsequently brought on October 1, 1971 by Aeronca, as successor to Microtron, for the balance due of $26,928.20 on the Microtron-Style-Crafters intercompany account. Style-Crafters was named a defendant since it was the entity with which the debt was incurred. The suit was brought against Gladding both as successor in interest to Style-Crafters' liability on the intercompany account, and also on its guaranty agreement of November 5, 1969. The defendants first filed a motion to dismiss for lack of personal jurisdiction, which the court denied on February 24, 1972. The defendants then filed an answer denying a balance was due on the account. Gladding also asserted two counterclaims: the first was for breaches of warranty given in the sales agreement, alleging that inaccuracies in the financial statement of September 30, 1969 had damaged it to the extent of $14,023.51 in excess of the $12,500.00 deductible figure set forth in the agreement; in the second counterclaim, Gladding sought to recover $59,128.84 for adjustments it claimed should be made in the intercompany account to reflect its proper status.

In its order of September 1, 1972, the district court granted Aeronca's motion for summary judgment against Style-

---

**2.** In this action, Gladding also challenges the validity of a management fee of $43,493.00 charged as of November 30, 1968.

Crafters and Gladding, jointly and severally, in the amount of $26,928.20 and dismissed Gladding's second counterclaim on account of adjustments in the inter-company account.[3] The issues raised in the first counterclaim were set for trial. On March 22, 1973, the court found that the breaches of warranty Gladding had shown did not amount to as much as the $12,500.00 deductible clause in the agreement. Subsequently, the court entered final judgment in favor of Aeronca in the amount of $26,778.20.

## II.

Gladding and Style-Crafters contend that the federal district court for the Western District of North Carolina lacked personal jurisdiction over them, since both are foreign corporations and neither maintains a place of business in North Carolina. Gladding further asserts that the contract entered with Microtron for the purchaser of Style-Crafters was effected not at the November 5, 1969 closing in Charlotte, but by telephone on about September 30, 1969 when Gladding's officer in New York accepted the Microtron offer.

We find these contentions to be without merit. The plaintiff, Aeronca, maintains a usual place of business in Charlotte, North Carolina; consequently, Aeronca is entitled to the benefit of the North Carolina long-arm statute.[4] The relevant legislation, N.C. Gen.Stat. § 55–145, provides in pertinent part:

"§ *55–145. Jurisdiction over foreign corporations not transacting business in this State.* (a) Every foreign corporation shall be subject to suit in this State, by a resident of this State, or by a person having a usual place of business in this State . . . on any cause of action arising as follows:

(1) Out of any contract made in this State or to be performed in this State; . . . ."

As before mentioned, Aeronca's claim against Gladding and Style-Crafters is based alternatively on either of two contracts. The first is the intercompany account, established and maintained by Microtron at its Charlotte, North Carolina offices with Style-Crafters, its wholly-owned South Carolina subsidiary. The second contract sued upon is Gladding's written agreement of November 5, 1969 which guarantees payment of the intercompany account.[5] The intercompany account was created, at least in part, in North Carolina. And since payment on the intercompany account was to be made by Style-Crafters to its North Carolina parent, the contract was to be performed in North Carolina. Moreover, Gladding concedes that the letter guaranteeing payment of the account was signed by its officer at the closing in Charlotte, North Carolina. Thus, on these facts, we find the district court's exercise of personal jurisdiction over the defendants proper. See Byham v. National Cibo House Corp., 265 N.C. 50, 143 S.E.2d 225, esp. p. 233, 4 (1965); Goldman v. Parkland of Dallas, Inc., 277 N.C. 223, 176 S.E.2d 784 (1970).

## III.

Our discussion of the merits of the appeal will focus first on the summary

---

3. No opinion giving reasons for the court's action accompanied the order granting summary judgment in favor of Aeronca on its claim on the intercompany account and dismissing the second counterclaim.

4. For the application of state long-arm statutes in Federal court proceedings, see F.R. Civ.P. 4(e).

5. Gladding contends that Aeronca's claim based upon the agreement to pay the account amounts to mere surplusage. It suf-

fices to say that Rule 8(a), F.R.Civ.P., permits a party to demand relief in the alternative; Rule 18(a) permits a party to join, either as independent or alternative claims, as many claims as he has against an opposing party. Gladding further argues that the agreement is nevertheless invalid since it lacks consideration. Yet, in return for guaranteeing payment on the account, Gladding received an extension of time for payment of the account, and Microtron's agreement to go forward with the closing.

judgment issues, Aeronca's claim for $26,928.20 on the intercompany account and Gladding's counterclaim for adjustments in that account amounting to $59,128.82.

The district court's order of September 1, 1972, which grants summary judgment for the plaintiff on both claims, gives no reason to support its action. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

### A.

In its motion for summary judgment upon the intercompany account, Aeronca contended in the district court that summary disposition was proper for two reasons: First, there was no genuine issue of material fact that Style-Crafters owed $26,928.20 on the account, since Style-Crafters and Gladding had raised no defense to the suit other than the matters contained in the second counterclaim; and secondly, there was no issue of material fact since Gladding had conceded that its officer, with authority, had signed the letter guaranteeing payment of the account. We find neither reason compelling.

The affidavit of Gregory D. Shorey of July 19, 1972, which must be taken as true on a motion for summary judgment, raises a question of fact as to whether there was any amount owing to Microtron on the intercompany account. Shorey states that from February 1967 to November 5, 1969 he was the elected president of Style-Crafters, Inc., that he was employed full time on its corporate activities, and that he was familiar with and knowledgeable concerning most of the operations of Style-Crafters, Inc. He further states that he had "no knowledge of any prior authorization or approval of any 'management fee' to be paid by Style-Crafters, Inc., to Microtron Corporation nor does any such authorization or approval appear in the minute books maintained by Style-Crafters, Inc., recording the action of the Board of Directors and stockholders of Style-Crafters, Inc." Shorey also claims that the management fees claimed by Microtron for both 1968 and 1969 were entered on Style-Crafters' books by a clerical employee of Style-Crafters acting on the orders of Microtron officers. The 1968 and 1969 fees together total $81,393.00, by far the largest items disclosed in the account. If the management fees are improper, Style-Crafters', and Gladding's liability on the intercompany account may be extinguished. Similarly, Gladding's liability on the guaranty letter, which, if a true guarantee as may be inferred by its treatment by the parties, would be contingent on the existence of a balance due Microtron on the account, might also terminate. See 10 Williston on Contracts § 1214 (3rd Ed. Jaeger 1967).

Another triable issue of fact remains as to Gladding's liability on the guaranty letter. Both in the pleadings and also in its briefs, Gladding claimed that its representative, Walter E. Robb, III, signed the letter because induced by untrue representations on the part of Microtron. Gladding's answer to the complaint alleges that the letter was signed "in reliance upon representations of the officers of Microtron Corporation that the indebtedness therein recited was justly owing and that the amount thereof was true and correct, which representations were not true." The defense is further supported by the affidavit of Walter E. Robb. If the execution of the guaranty was induced by Microtron's untrue statements, a defense may exist as to any liability on the letter; thus, Gladding should be given the opportunity to develop its defense at trial in the district court. See American Pure Food Co. v. Elliott & Co., 151 N.C. 393, 66 S.E. 451 (1909); White Sewing Machine Co. v. Bullock, 161 N.C. 1, 76 S.E. 634, 639 (1912); Homelite v. Trywilk Realty Co., 272 F.2d 688 (4th Cir. 1964).

## B.

In its second counterclaim, Gladding claimed it was entitled to recover from Aeronca, as successor to Microtron, a balance of $59,128.84 by reason of a number of adjustments required to be made in the intercompany account. Specifically, Gladding made the following claims:

(1) The journal entries of November 30, 1968 for $43,493.00 and August 31, 1969 for $37,900.00 charged to Style-Crafters for management fees are improper and should be eliminated from the account;

(2) Style-Crafters is entitled to a credit against Microtron in the amount of $1,325.77 since, at the behest of Microtron, it equipped an IBM Data Processing Machine with special panels for serving Microtron Abrasives, Inc., a subsidiary of Microtron. During October and November of 1969, Style-Crafters furnished Abrasives the use of its data processing facilities and other supplies.

(3) Style-Crafters is entitled to a total adjustment of $3,150.15 arising out of Microtron's take-over of an IBM 632 machine belonging to Style-Crafters. At the time of the change of ownership, Microtron assumed the remaining debt on the machine and charged $400.15 against Style-Crafters. But because the reasonable market value of the IBM 632 was $2,750.00 in excess of the debt assumed, Style-Crafters should have received a credit for that amount and the $400.15 charge should never have been assessed.

(4) Style-Crafters is entitled to a credit of $188.12, since Microtron took possession of four new tires purchased by Style-Crafters.[6]

When the district court granted summary judgment on the intercompany account, it also entered summary judgment and dismissed the second counterclaim. Aeronca has argued both in the district court and on appeal that, since the transactions which were the subject of the counterclaim took place prior to the date of sale of the stock, Gladding was foreclosed from asserting its defense and counterclaim under general principles of equity. It relies upon Park-Terrace, Inc. v. Burge, 249 N.C. 308, 106 S.E.2d 478, 482–483 (1959),[7] and F.R. Civ.P. 23.1[8] as preventing Gladding from attacking corporate transactions which took place before it bought the Style-Crafters stock. In granting summary judgment for Aeronca, the district court

---

6. The amount of $59,128.84 is arrived at by eliminating from the account the management fees, totaling $81,393.00; and by crediting Style-Crafters, Inc., with $1,325.77 due by Microtron Abrasives, Inc., $3,150.15 for the IBM 632 machine, and $188.12 for the tires. These adjustments in favor of Style-Crafters total $86,057.04. Subtracting the debit balance shown in the books of $26,928.20 leaves a credit balance of $59,128.84 in favor of Style-Crafters.

7. Park-Terrace, Inc. v. Burge involved a derivative action brought against officers and directors of Park–Terrace Corporation by certain shareholders, none of whom owned stock at the time of the transactions complained of. The North Carolina Supreme Court held:

"[i]n view of the fact that none of the present stockholders of the plaintiff corporation was a stockholder at the time of the transactions of which the plaintiff complains; the further fact that they ob-

tained their shares through voluntary purchase or transfer (citation omitted), and not by operation of law, and since the action was not brought in behalf of creditors or for the purpose of 'asserting or endeavoring to protect a title to property,' but solely as a suit in equity as the representative of its stockholders, it cannot be maintained . . . ."

8. Rule 23.1 of the Federal Rules of Civil Procedure provides, in relevant part:

"In a derivative action brought by one or more shareholders or members to enforce the right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. . . ."

apparently regarded Gladding's counterclaim as essentially a stockholder's derivative action and applied either *Park-Terrace* or the contemporaneous shareholder doctrine of F.R.Civ.P. 23.1, since the pleadings and affidavits raise genuine issues of fact regarding Style-Crafters' liability. We do not view this suit as equitable in nature; nor do we feel that the rules applying to shareholder's derivative actions should apply. Thus, we find neither reasons supports summary judgment.

When Microtron and Gladding met at Charlotte, North Carolina on November 5, 1969 to close the transaction, settlement of the intercompany account became part of the larger transaction of the purchase of all of the Style-Crafters stock by Gladding from Microtron. And Gladding claims it was agreed it was to be given an opportunity to inspect the company records to verify the various items on the account before payment became due. Both Aeronca's claim and Gladding's second counterclaim depend in whole or in part on these facts. Aeronca seeks the stated amount of $26,928.20 allegedly due on the account; Gladding claims that because of numerous irregularities a balance is in fact due Style-Crafters. Viewed in this light, the conflicting claims represent not a shareholder's derivative action, but a dispute between a buyer and a seller over the purchase price of a chattel and the value of the chattel sold. Thus, the fact that Gladding was not a shareholder at the time of the transactions complained of does not disqualify it as a matter of law from asserting its defense or its counterclaim in this case. Gladding is entitled to defend in its own right as the purchaser of the stock and also as the successor to the liabilities and assets of Style-Crafters. The opposite approach would lead to the untenable holding that, although Aeronca might sue its former subsidiary, the subsidiary could neither defend nor assert a counterclaim because of the rules of *Park-Terrace* and F.R.Civ.P. 23.1. We have had cited to us and found no case which so holds, and we decline to apply to this transaction (which is essentially a dispute between adversary corporations about corporate rights rather than a dispute between a corporation, or shareholder, and its officers or directors) any such strained construction of rules designed to govern suits between stockholders and corporate officers or directors, or stockholders and the corporation in which they may hold stock. *Cf.* Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Co., —— U.S. ——, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974). If Style-Crafters had not been dissolved under S.C.Code, Title 12, Ch. 1.12, and certainly corporate dissolutions are an everyday occurrence in the business world, no serious contention could have been made that it might not defend a suit by its former parent on the merits of the claim or assert a counterclaim against its former parent. We are of opinion dissolution interposed no such restriction, either under *Park-Terrace* or F.R.Civ.P. 23.1.

Although decided prior to the insertion of F.R.Civ.P. 23.1 in 1966, we think the language of the court in Central Ry. Signal Co. v. Longden, 194 F.2d 310, 321 (7th Cir. 1952) is persuasive:

"[w]e think the doctrine of contemporaneous ownership, as defined in Rule 23(b) of the Federal Rules of Civil Procedure does not apply to a suit by a corporation. The title of the rule is 'Class Actions' and the pertinent portion is designated, 'Secondary Action by Shareholders.' It provides that where a stockholder institutes a class action because of the corporation's refusal to enforce rights which it might properly assert, the complaint must aver that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. Under the rule, the complaint must set forth with particularity the efforts of the plaintiff to secure from the managing directors such action as he desires and the reasons for his failure to obtain such ac-

tion or for not making the effort. It is clear that the rule has to do with a secondary action by shareholders and not with primary actions by incorporated or unincorporated associations; it has no application where the corporation brings the action itself to enforce its own right, as here."

See also Zahn v. Transamerica Corp., 162 F.2d 36, 48 (3rd Cir. 1947); General Inv. Co. v. Lake Shore & M. S. Ry., 250 F. 160 (6th Cir. 1918); 7A Wright and Miller, Federal Practice and Procedure (1972), p. 353.

Because these are triable issues of fact as to Aeronca's original claim and as to Gladding's second counterclaim, they must be remanded for trial.

## IV.

Gladding based its first counterclaim upon Microtron's warranties contained in the agreement of sale of November 5, 1969. Microtron had warranted the correctness of Style-Crafters' financial statements of September 30, 1968 and September 30, 1969, and also the absence of any liabilities not disclosed in the September 30, 1969 statement. Microtron further agreed to indemnify Gladding for any liabilities in excess of $12,500.00 caused by breach of any warranties given in the agreement. Gladding claims that Microtron's breaches of warranty have damaged it to the extent of $14,023.51 in excess of the $12,500.00 deductible figure set forth in the agreement.

The issues raised in this counterclaim were set for trial before the court sitting without a jury. In its judgment of March 22, 1973, the court found several items constituted breaches of warranty totaling $6,625.73.[9] Since the $12,500.00 deductible clause exceeded this amount, the court denied relief under the first counterclaim.

Gladding contends that the court erred in several rulings leading to its conclusion, most of which concern findings of fact, among them:

(a) Microtron made certain concessions in a letter of E. L. Disbrow of July 7, 1971. Aeronca sought to withdraw the concessions so to leave the items in dispute. At trial, it was shown that Disbrow had not been with Microtron at the time that Hartley, Microtron's Treasurer, and Cogan, Gladding's accountant, had met to discuss the intercompany account. Hartley's deposition, introduced at trial, indicated that Disbrow wrote the letter on the basis of information later learned to be incorrect. The court treated these concessions as properly withdrawn.

(b) A Peoples National Bank letter of credit in the amount of $5,751.35 was in order to pay for a shipment of kapok. Because the shipment had allegedly not been received, the letter of credit was treated as an asset on the intercompany account. After hearing evidence, the court concluded there was no evidence that the kapok shipment referred to in the documents had been received, and that the item was properly treated as an asset as of September 30, 1969.

(c) Prepaid advertising in the amount of $5,035.83 consisted of items such as the boat show in September 1969, and the 1970 catalogues. They were expenses incurred at the end of the period in question and designed to produce results in the forthcoming year.

(d) As for accounts receivable in the amount of $1,711.65 and disputed accounts receivable in the amount of $1,336.74 which the defendants claimed were worthless September 30, 1969, the court found no evidence pre-

---

9. The court found the account receivable from Custom Products shown in the amount of $2,363.00 on the financial statement of September 30, 1969 was worthless; the Computer Systems item shown on the September 30, 1969 statement as a prepaid ex-

pense in the amount of $9,518.11 was worthless to the extent of $3,455.90; and the parties had stipulated that the prepaid travel item in the amount of $806.83 on the financial statement of September 30, 1969 should have been written off as of that date.

sented as to the financial condition of the debtors, nor whether the collectibility of those accounts had been or reasonably could have been established before the end of September 1969.

■ We have considered these claims in light of Rule 52(a) of the Federal Rules of Civil Procedure, which provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." We are of opinion that, with the possible exception of the $5,751.35 letter of credit, the findings are not clearly erroneous. There is evidence to support each of the district court's disputed findings of fact. We are also of opinion the district court did not abuse its discretion in treating the concessions as withdrawn. As to the People's National Bank letter of credit for $5,751.35, there is evidence tending to show the kapok shipment was received. Documents accompanying the kapok indicate that 200 bales of kapok were loaded on the "Temeraire" April 26, 1969 in Bangkok, consigned to the Chase Manhattan Bank for Style-Crafters. The Bill of Lading (#40958) shows that when the shipment was received in Charleston, South Carolina on July 30, 1969, one bale was missing. A Style-Crafters receiving record of August 7, 1969 acknowledges receipt of 399 bales of kapok. It would appear this represents two shipments of what were originally 200 bales each. Moreover, Style-Crafters' August 1969 claim against Palmetto Shipping Company for the short bale on B/L 40958 represents an implied admission that the remaining 199 bales were received. But even if we were to find clearly erroneous the district court's holding that the kapok shipment was never received by Style-Crafters, the loss caused by this breach added to the previously ascertained amount ($5,751.35 + $6,625.73) would result in an aggregate below the $12,500.00 deductible, so there would not be reversible error, and Gladding would still not be entitled to a recovery on the first counterclaim.

We note that we express no opinion as to the merits of Aeronca's original claim nor as to the merits of Gladding's second counterclaim, but only hold entry of summary judgment was not proper.

We also note that nothing we have said would foreclose litigation on remand of whether or not the purchase price of the Style-Crafters' stock was adjusted in the amount of $26,472.15 without regard to whether or not such sum was actually owed by Style-Crafters to Microtron. We do not suggest any such agreement existed, but neither does the record at this stage foreclose the possibility, and, for this reason, we deem it worthy of mention here.

Affirmed in part; reversed in part; and remanded.